# EXHIBIT A



**Exhibitor Application Form for the main section - Applications close August 3, 2017**

### 1. Gallery Details

**Gallery Name** : Shane Campbell Gallery

**Address** : 2021 S Wabash Ave

**City/State/Province** : Chicago

**Post/Zip Code** : 60616

**Country** : USA

**Website** : http://www.shanecampbellgallery.com

**Gallery Telephone** : 312 226 2223

**Gallery Email** : info@shanecampbellgallery.com

**Application Contact** : Megan Bedford

**Contact Email** : megan@shanecampbellgallery.com

**Joint Application with** (if applicable)

### 2. Approximate Stand Dimensions and Prices

**Main section - stand size selected**
(Stand sizes may vary by 20% and will be charged accordingly at a rate of $78.50 per ft$^2$)

[X] **Main S 431ft2 (40m2)**

[ ] **Main M 646ft2 (60m2)**

[ ] **Main L 861ft2 (80m2)**

[ ] **Main XL 1076ft2 (100m2)**

[ ] **Main XXL 1292ft2 (120m2)**

There will be a surcharge for privileged locations of up to 15% e.g. corner stands or stands on the open squares.

**Each stand in the main section of the Fair includes the following:** — 12ft high (3.6m) perimeter walls painted white — General hall lighting (minimum 350 lux)

— 2 name boards

— Publication entry

— Presence on frieze.com

— Exhibitor and Gallery Worker passes

— Invitations and VIP card

**3. Selection Criteria**

Applicants to the main section at Frieze New York must show an international programme of artists and present a minimum of four exhibitions per year in their galleries. Exceptions will be considered on a case by case basis. Any gallery who applies must be a commercial venture. Joint applications to the main section will be considered and must include separate submitted applications from both parties.   Stand sizes range from 431ft2 (40m2) - 1292ft2  (120m2), and will be charged at a rate of $78.50 per square foot. . Approved applications must be carried out in accordance with the proposal presented.     Galleries will be informed in writing by the Fair Management as to whether their application has been accepted by the end of October 2017.

**4. Application Procedure**

The application procedure for the main section requires that you complete the following information:

1. gallery information and stand size requirements

2. a list of artists represented by the gallery

3. a list of exhibitions from the last two years, or for the upcoming year

4. a brief history of the gallery

5. a written proposal for your stand

6. ten small jpegs, which are representative of your gallery programme, five of which should be recent works shown at the gallery and five should be gallery installation views

7. an agreement to the exhibition terms and conditions

8. a processing fee of $540

Only fully completed applications will be considered. Please note that we are unable to return any of the support material provided. All material will be discarded after three months.

Applications must be accompanied by a processing fee. Processing fees are required from both galleries in cases where joint applications are being made. This payment is non-refundable.

[X]   A processing fee of $540 was paid via http://applications-newyork.frieze.com/

Participation in the Fair is subject to the terms set out in this application form and the attached terms and conditions.

All applications are subject to the written acceptance of the Fair Management. For the avoidance of doubt, the decision of the Selection Committee is final and an unsuccessful application will have no right to make a claim against the Fair Management in resepect of the Selection Committee's decision.



## Exhibition Terms and Conditions

**1. Definitions:**

Unless the context clearly otherwise requires, for the purposes of the Contract, the following words and phrases will have the following meaning:  "Applicant" means an applicant for participation in the Fair as an Exhibitor.

"Application" means the official Application Form for admission to the Fair properly completed by an applicant for participation in the Fair and subject to written acceptance by Frieze, in its sole discretion.

"Contract" means the contract between Frieze and Exhibitor consisting of the Application (as properly completed by an Applicant and accepted by Frieze), together with these Exhibition Terms and Conditions and such other terms and conditions as may have been specified by Frieze, including those set forth in the Exhibitor's Manual, and all exhibits and schedules hereto, as the same may be amended, amended and restated, modified or supplemented from time to time.

"Exhibitor" means the Applicant participating in the Fair following written acceptance of such Applicant's Application by Frieze.

"Exhibitor's Art" means the art or sculpture approved by Frieze, in its sole discretion, for display in the Exhibitor's Booth.

"Exhibitor's Booth" means the space allocated by Frieze for display of the Exhibitor's art (and surrounding sculpture space, if any, as may be designated by Frieze) as part of the Fair.

"Exhibitor's Manual" means the manual published by Frieze containing supplementary information for Exhibitors, as the same may be amended, amended and restated, modified or supplemented from time to time.

"Fair" means the Frieze Art Fair scheduled to take place May 2 – May 5, 2018 to be held at Randall's Island, in New York City.

"Fair Premises" means the area designated for the location of the Fair on Randall's Island in New York City, including the temporary structure (and designated sculpture space, if any) to be located in such area.

"Frieze" means Frieze Events Inc., a New York corporation and its parent, affiliate and subsidiary companies

"Indemnified Parties" has the meaning set forth in Clause 10 below.

"Landlord" means the City of New York or its applicable agency or designee.

**2. Governing terms and conditions:**

These Exhibition Terms and Conditions govern the participation by the Exhibitor in the Fair. Exhibitor agrees to be bound by and to comply with the Contract, including these Exhibition Terms and Conditions. An Applicant's participation in the Fair is subject to written acceptance by Frieze. Frieze reserves the right to waive compliance with, and/or to amend, amend and restate, modify or supplement from time to time, any of the terms and conditions included in the Contract, whether generally or in any particular case. Waivers of compliance of any one or more of the such terms and conditions may be granted by Frieze, in its sole and absolute discretion, but any such waiver will only

be effective if given in writing.

**3. Withdrawal prior to acceptance:**

An applicant may withdraw its Application, by written notice to Frieze, at any time prior to the written acceptance of such Application by Frieze.

**4. Payment:**

Application must be accompanied by processing fees as follows:
US $540 for the main section of the Fair;
US $540 for the "Spotlight" section of the Fair;
US $325 for the "Frame" section of the Fair;
US $325 for the"Focus" section of the Fair;

US $540 in the aggregate for more than one Application; except US $490 in the aggregate for two Applications to  the "Focus" and "Frame" sections of the Fair.

Under no circumstance whatsoever, shall a processing fee be refundable in whole or in part by Frieze, including upon withdrawal or rejection by Frieze of an Application by an Applicant.

After acceptance by Frieze of an Application, the relevant Exhibitor will be invoiced for the total rental fee for an Exhibitor's Booth. Rental fees shall be payable as follows:
50% of the total fee by December 1, 2017
50% of the total fee by February 24, 2018

If any portion of the rental fee is not timely paid, Frieze shall be entitled, without prejudice to any other right or remedy it may have, to (i) terminate the Contract, (ii) retain any payments made by the Exhibitor, and/or (iii) charge interest at the rate of the prime rate, as published by The Wall Street Journal, from time to time, plus 4% on the amount unpaid from the due date until payment is made in full. The preferred methods of payment are by business or bank check or electronic funds transfer denominated in U.S. dollars; provided that, Frieze may, in its sole discretion, accept payments by credit card subject to a 4% convenience charge.

Upon receipt of notification of admission, a security deposit of US $500 for Frame and Focus and US $1,000 for Main and Spotlight Exhibitors will be added to the first rental fee invoice. This sum, or part of this sum, will be retained by Frieze for any damaged walls or abandoned items found on the Exhibitor's Booth following the fair's dismantling. The remaining sum will be refunded to the Exhibitor. If the damaged walls or abandoned items charge exceeds the amount of the deposit, the Exhibitor will be

invoiced for the difference.

**5. Work exhibited:**

Frieze has the right to require complete details of any proposed exhibit of an object or objects purporting to be a work of art, including performances and live animals, and reserves the right to prohibit the exhibition of any object(s), which is (are) not acceptable to Frieze, in its sole and absolute discretion. If notified to do so by Frieze, whether orally or in writing, Exhibitor will promptly remove any object(s) from Exhibitor's Booth and the Fair Premises, as and when directed by Frieze, and/or immediately cover any object(s), as and when directed by Frieze. If Exhibitor fails to remove and/or cover any object(s) within five (5) hours after being notified by Frieze to do so, Frieze may

cover such object(s) and/or remove such object(s) from the Fair Premises, at the sole cost and expense of Exhibitor.

Exhibitor shall be responsible for all rights clearances and payments due to any individual and/or any third party rights holder in connection with display and/or sale of any work of art and the advertising and promotion thereof, including without limitation, rights to use any name, likeness, bio or image of an artist, a gallery or work of art provided by or on behalf of Exhibitor or captured during the Fair. Exhibitor represents and warrants that it has all such rights. Frieze shall have the right to capture and use images of the Fair, and authorize attendees and third parties to capture and use images of the Fair, including the right to create, distribute, use, exhibit and promote video and still recordings of the Fair which may include works of art, artist's name, Exhibitor and/or gallery name and their logos, trademarks or other material of Exhibitor or artist, for

which no compensation or approval shall be required.

**6. Admission to the Fair Premises:**

Exhibitor must obtain from Frieze the necessary passes and credentials to admit their representatives and agents to the Fair Premises during the time that Frieze designates for Exhibitor to set up Exhibitor's Booth. Frieze reserves the right to refuse to admit or to expel any person notwithstanding that person's possession of a pass if Frieze, in its sole and absolute discretion, determines that such refusal or expulsion, is in the best interests of the Fair. Frieze has the right to refuse admission to the Fair Premises of any officer,

employee, representative or agent of an Exhibitor until outstanding amounts payable to Frieze by such Exhibitor have been paid in full.

**7. Participation:**

Exhibitor shall use the Exhibitor's Booth for the duration of the Fair solely to display objects approved by Frieze. Performance art and display of live animals must be approved by Frieze prior to the Fair. Exhibitor shall keep Exhibitor's Booth sufficiently manned during the time the Fair is open for viewing, at Exhibitor's sole cost and

expense.

To maintain the appearance of the Fair, as determined by Frieze, in its sole and absolute discretion, no lighting, furniture, equipment, walls, storage areas, or other property shall be used by Exhibitor at its Exhibitor's Booth unless approved in writing by Frieze in advance of the installation or placement of the same at or within the Exhibitor's Booth.

Exhibitor shall not participate in any other fairs located in New York for the duration of Frieze New York.

**8. Show dates:**

Frieze New York 2018 will take place May 2 – May 5, with an invitation-only preview followed by three general public days.

**9. Allocation of space:**

The placement of Exhibitor's Booth at the Fair will be designated at the sole and absolute discretion of Frieze. Frieze cannot, and does not, guarantee the location of the Exhibitor's Booth. Special requests concerning location and space requirements will be considered by Frieze, but cannot, and will be not, be a condition precedent to Exhibitor's obligation to participate in the Fair or any payment obligation of Exhibitor under the Contract, or give Exhibitor a right to terminate the Contract.

Frieze may change the location of any space allocated to an Exhibitor's Booth if circumstances demand such, as determined by Frieze, in its sole and absolute discretion. Frieze, in its sole and absolute discretion, reserves the right to alter the allocation of common space and to relocate the aisles, entrances and exits of the Fair Premises at any time.

Exhibitor's Booth may only be occupied by Exhibitor in accordance with the terms and conditions of the Contract. Exhibitor will not sublet or subdivide the Exhibitor's Booth or any part of it. Exhibitor will not permit any other party to use Exhibitor's Booth for any purpose whatsoever, except for the display to the public admitted into the Fair by Frieze of objects approved by Frieze for such display.

The officers, representatives, employees, agents and contractors of Frieze, including its parent, affiliate and subsidiary companies, shall have the right to enter any part of the Fair Premises, including Exhibitor's Booth, at any time to execute work, repairs and alterations and for other purposes. No compensation or damages will be payable to the Exhibitor for any death, injury, damage, loss or inconvenience occurring during the course of, or as the result of, any such work, repairs, alterations or other entry, except

where proximately caused by the gross negligence of Frieze or any such representative, officer, employee, agent or contractor.

**10. Indemnity:**

Exhibitor will indemnify, defend and hold harmless Frieze and each and all of its respective directors, officers, stockholders, employees, representatives, agents, subsidiaries, affiliates, legal representatives, parent, affiliate and subsidiary companies, successors and assigns, other participants in the Fair, any sponsors, advertisers, production entities, and, if applicable, Landlord, owners and lessors of the Fair Premises (collectively, the "Indemnified Parties") from and against any and all liabilities, claims, demands, causes of action, damages, injuries, losses, actions, proceedings, judgments, costs and expenses, including, without limitation, attorneys' fees and disbursements other litigation costs, of any nature whatsoever, whether in law or equity, known or unknown, caused or alleged to be caused by, occurring or alleged to have occurred, resulting from and in any way arising out of, in whole or in part: (a) the Exhibitor's Booth and/or the Fair Premises, or the use thereof, by Exhibitor and/or any of Exhibitor's respective directors, officers, stockholders, managers, members, employees, representatives, agents, subsidiaries, affiliates, contractors, legal representatives, successors, assigns, invitees, guests or customers or the presence of any such persons upon the facilities of the Fair; (b) any breach of the Contract by Exhibitor and/or any of Exhibitor's respective directors, officers, stockholders, managers, members, employees, representatives, agents, subsidiaries, affiliates, contractors, legal representatives, successors and assigns, and/or (c) any negligence or misconduct of Exhibitor and/or any of Exhibitor's respective directors, officers, stockholders, managers, members, employees, representatives, agents, subsidiaries, affiliates, contractors, legal representatives, successors and assigns, invitees, guests or customers. Such indemnification and hold harmless obligations shall

include, but shall not be limited to:

- any claim made in respect of damage to persons and property caused by Exhibitor or any of Exhibitor's respective directors, officers, stockholders, managers, members, employees, representatives, agents, subsidiaries, affiliates, contractors, legal representatives, successors, assigns, invitees, guests or customers, Exhibitor's Booth, installation, furnishings, or exhibits;

- any breach of the terms and conditions of the Contract by Exhibitor and/or or any of Exhibitor's respective directors, officers, stockholders, managers, members, employees, representatives, agents, subsidiaries, affiliates, contractors, legal representatives, successors or assigns;

- any claim for  infringement of intellectual property or proprietary rights of any third party, including, without limitation, copyrights and trademarks, for which Frieze may be sued or held liable relating to work submitted by or through Exhibitor or any acts or omissions of the Exhibitor and/or any of Exhibitor's respective directors, officers, stockholders, managers, members, employees, representatives, agents, subsidiaries, affiliates, contractors, legal

representatives, successors or assigns in connection with the Fair during the period of occupation or otherwise, including, without limitation, any advertising or promotional material published by or on behalf of Exhibitor in connection with the Fair;- any claims by an artist for misuse or unauthorized use of artwork as captured in Fair or authorized

third party materials.

**11. Failure to occupy:**

An Exhibitor who fails to occupy its Exhibitor Booth by 1pm on the Preview Day will forfeit its right to occupy space and Frieze claims full right to that space. In that event,

the Exhibitor shall remain liable for the full rental fee and any additional costs incurred by Frieze.

**12. Insurance:**

Exhibitor, at its sole and expense, shall secure and maintain insurance as listed in this Clause 12 as will protect Exhibitor and Frieze, including its parent, affiliate and subsidiary companies, from claims which may arise in whole or in part from operations by Exhibitor at the Fair or any person directly or indirectly engaged or employed by

Exhibitor, or any person for whose acts Exhibitor may be liable:

(a) Commercial general liability insurance ("CGL") written on an occurrence (not claims-made) basis, covering liability for all operations of Exhibitor under the Contract, and covering claims for bodily injury, including, without limitation, sickness, disease or death of any persons, injury to or destruction of property, personal and advertising injury; The per occurrence and aggregate coverage limits of at least the amounts set forth below shall be specific to the Fair and apply separately to Exhibitor's obligations under the

Contract.

Minimum Limits:
US $1,000,000 each occurrence (bodily injury/property damage);
US $1,000,000 damage to leased premises (each occurrence);
US $10,000 medical expense (any one person);
US $1,000,000 personal and advertising injury (any one person); and

US $2,000,000 general aggregate (other than products-completed operations).

(b) Workers' compensation insurance covering all employees of Exhibitor engaged in any work on or about the Fair Premises in the form prescribed by New York State statutory law and with limits of at least the amounts set forth below, and employers' liability insurance with limits of at least the amounts set forth below and any other employee, work- related accident insurance required by the State of New York. All insurance required by this Clause 12(b) shall include a waiver of subrogation for the benefit of Frieze and the other Indemnified Parties.
Workers' compensation: as required by applicable statute(s); Employers' liability:
US $1,000,000 bodily injury each accident;
US $1,000,000 bodily injury each employee by disease; and
US $1,000,000 bodily injury each disease aggregate.

(c) If Exhibitor is loading or unloading any Exhibitor's Art or other items, commercial (business) automobile liability insurance, including coverage for hired, borrowed and non-owned vehicles and equipment used by Exhibitor, with combined single minimum limits of at least the amounts set forth below, exclusive of defense costs. In the event that the insurance required under this Clause 12(c) excludes any drivers from coverage, such drivers shall not be permitted to drive in connection with the performance of Exhibitor's obligations under the Contract.
Minimum Limit:
US $1,000,000 Combined Single Limit (bodily injury, death or property damage).
(d) Commercial excess or umbrella liability insurance policy with limits of at least the amounts set forth below, following the form and in excess of the underlying employers' liability, commercial general liability, and commercial automobile liability policies, with an effective date that is concurrent with such liability policies.
Minimum Limits:
US $5,000,000 per occurrence
US $5,000,000 annual aggregate

Exhibitor's liability insurance policies, other than workers' compensation, shall name Frieze and the other Indemnified Parties, including specifically Production Glue LLC, the City of New York, the New York City Department of Parks and Recreation ("Parks") and the Randall's Island Park Alliance (formerly the Randall's Island Sports Foundation, herein, "RIPA"), WME Entertainment, LLC, WME IMG, LLC and their respective directors, officers, employees, managers, members, employees, representatives, agents, subsidiaries, affiliates, contractors, legal representatives, successors and assigns as additional insureds, and such policies shall contain a provision to the effect that coverage will not be reduced, canceled or modified in any way, except upon not less than thirty (30) days written notice to Frieze by the same method as would be required under the laws of the State of New York for mailing such notice to the first named insured. Such policies shall provide that the insurer waives the right of subrogation for the benefit of Frieze and the other Indemnified Parties. All such policies shall be written as primary policies, which do not contribute to and are not in excess of coverage which Frieze may carry.
Exhibitor will also secure, pay for and maintain all risk property insurance in an amount at all times at least equal to the full retail value of all inventory and other personal property displayed or stored in Exhibitor's Booth or on the Fair Premises. Exhibitor's failure to secure such insurance or to maintain adequate levels of coverage shall not obligate Frieze or anyone else for any losses of Exhibitor's owned or rented personal property. Exhibitor waives any claims and right of recovery against Frieze and other Indemnified Parties for losses of owned or rented personal property. (Exhibitor's personal property insurance shall be endorsed accordingly to include a waiver of subrogation in favor of Frieze, WME Entertainment, LLC, WME IMG, LLC and other Indemnified Parties.)
All insurance policies required to be maintained by Exhibitor under the Contract shall be written by insurance companies licensed to do business in New York State with a minimum rating of A-/VIII by A.M. Best.
Exhibitor will provide certificates of insurance in accordance with the terms outlined in Clause 12 no later than April 2, 2018 and prior to Exhibitor's Booth or the Fair Premises at any given time. Exhibitor's failure to evidence said insurance required under the Contract shall constitute a material breach of the Contract for which Frieze may, in its sole discretion, suspend or terminate the Contract. In response to such failure, Frieze may, in its sole discretion, procure or renew such insurance necessary to protect Frieze's interests, pay any premiums in connection therewith and recover from Exhibitor all amounts so paid, as well as all other costs and fees incurred as a result of such

breach.


**13. Liability**:
All Exhibitor's Art displayed at the Exhibitor's Booth or the Fair Premises will be displayed at the sole risk of the Exhibitor. Exhibitor agrees that all handling of its Exhibitor's Art will be at its own risk and peril. Exhibitor must get permission from Frieze to hang heavy objects (i.e., objects exceeding 80 pounds in weight) from any wall. Even if such permission is granted, Exhibitor will be solely responsible for any damage whatsoever as a result of hanging any such heavy objects. If any damage occurs to the Exhibitor's Booth and/or the Fair Premises as a result of Exhibitor's installation or transportation of any objects, Exhibitor agrees to immediately repair such damage at its sole cost and expense and to the satisfaction of Frieze. If Exhibitor fails to promptly make such repairs to the satisfaction of Frieze, then Frieze may, but shall not be obligated, to make such repairs and charge the cost to Exhibitor as mentioned in Clause 4 above (Payment).
Frieze will be under no liability to Exhibitor whatsoever (whether in contract, tort (including negligence), breach of statutory duty, restitution or otherwise) for any injury, death, damage (including damage or loss to any artwork) or direct, indirect or consequential loss (all three of which terms include, without limitation, pure economic loss, loss of profits, loss of business, depletion of goodwill and like loss) howsoever caused arising out of or in connection with the Fair, including without limitation, rain, wind or other weather conditions, or the Contract, including without limitation, infringement of intellectual property or proprietary rights of any party, including, without limitation,

copyright and trademark rights, except if directly caused by the gross negligence or willful misconduct of Frieze.


**14. Permitted Exhibits:**
Objects permitted at the Fair are, generally speaking, works of visual art or sculpture which works are subject to health and safety inspection once installed, including, but not limited to an inspection by the appropriate authority (ies). Any exhibit in Exhibitor's Booth or under Exhibitor's control that fails to meet the health and safety criteria specified in the Exhibitor's Manual, or otherwise required by Exhibitor, shall be removed or covered by Exhibitor at Exhibitor's sole cost and expense as and when directed, either orally or in writing by Frieze, or Exhibitor shall immediately take such steps as are necessary to make sure that the criteria are met to Frieze's satisfaction. If Exhibitor

fails to promptly comply with the foregoing, Frieze shall have the right to remove and/or cover any exhibit at the sole cost and expense of Exhibitor.


**15. Compliance with Laws:**
Exhibitor shall comply with all applicable laws, codes, ordinances, rules, regulations, health and safety requirements at all times for the duration of the Fair, including when

setting up for the Fair and when breaking-down at the end of the Fair.


**16. Publication and visitor information:**
Inclusion in any publication prepared by Frieze in connection with the Fair and the visitor information system is obligatory for all Exhibitors. Each Exhibitor will receive an entry in the publication, and one free copy of the Fair publication. Frieze reserves the right to reject or amend any publication information supplied by the Exhibitor. Frieze shall have the right to use the name, likeness, trademark, logos, photos and images of the Exhibitor, artist and/or work(s) of art. Exhibitor represents and warrants it has the

right to grant all of the above referenced rights.

**17. Security:**  Frieze will use commercially reasonable efforts to arrange a guard service for the Fair twenty-four (24) hours a day, commencing from the first day of installation until the last day of dismantling, but any security guards will not be responsible for the security of Exhibitor's Booth.
To maintain security, once installation commences, nothing can be removed from the Fair Premises unless accompanied by the appropriate pass, until the dismantling is complete.
Frieze will provide general security for the Fair including the exhibits, but Exhibitor assumes all risks associated with the Fair and its exhibitions.

**18. Electrical services:**
Frieze will use commercially reasonable efforts to provide common area lighting, heating and air conditioning, but shall not be liable for any loss or damage due to failure or interruption of any service. No Exhibitor is allowed to install its own power connection. All applicable fire, safety and security regulations must be complied with and observed by Exhibitor at all times.

**19. Maintenance:**
Frieze will be responsible for keeping the common areas of the show site clean. Each Exhibitor is responsible for the maintenance of its Exhibitor's Booth and will leave its Exhibitor's Booth in the condition in which it was found, reasonable wear and tear excepted. Exhibitor will be responsible for and promptly pay the cost of repairing, restoring or renewing in all cases of loss or damage to the Fair Premises caused directly or indirectly by Exhibitor, its officers, employees, representatives, agents or contractors, such costs to be assessed by Frieze.

**20. Delivery and installation of exhibits:**
Frieze will use commercially reasonable efforts to ensure sufficient vehicle access to the Fair Premises to enable Exhibitor adequate time to set up its Exhibitor's Booth. Full details will be available in the Exhibitor's Manual, and must be diligently complied with and observed by Exhibitor. Exhibitor must follow the instructions of traffic marshals and other authorized personnel and not drive on grass/any areas without permission of the traffic marshals, police, the Landlord, or any other authority having jurisdiction there over.

**21. Sales of goods and exhibits:**
Exhibitor may offer Exhibitor's Art for sale to visitors at its Exhibitor's Booth and shall comply at all times with all applicable laws, rules and regulations, including collection and payment of all appropriate sales and excise taxes. Exhibitor shall issue a receipt for each sale made by it at the Fair, which must clearly show the Exhibitor's full legal name and trading title, together with its permanent address and the Exhibition Booth number.  Exhibitor shall be fully liable for all sales and shall indemnify, defend and hold Frieze and the Indemnified Parties harmless from any and all claims relating thereto.

**22. Force Majeure:**
In the event of abandonment, postponement, extension or limitation of the Fair or use of the Fair Premises or any part thereof or removal of any part of the Fair, or abandonment, postponement, extension or limitation or removal of any of the services provided therein, caused by or resulting from events of war, acts of God, fire, flood, extreme weather, national emergency, labor dispute, strike, terrorism or threat thereof, inevitable accident, the non-availability of the Fair Premises, or any other cause not within the control of Frieze (each, a "Force Majeure Event"), Frieze will be under no liability to the Exhibitor in respect of any actions, damages, claims, losses, including, without limitation, consequential losses (including loss of profits), costs or expenses whatsoever which may be brought or suffered or incurred by the Exhibitor as the result of the happening of a Force Majeure Event. In the event of a Force Majeure Event, Frieze has the right to retain any payments made and to claim and collect any outstanding payments, and will use its discretion in exercising its right at such a time as a Force Majeure Event occurs.

**23. Termination:**
Without prejudice to its other rights and remedies, Frieze shall be entitled forthwith to terminate a Contract with an Exhibitor by written notice to the Exhibitor at any time if:
(i) acceptance of Exhibitor's Application was based on false or misleading information provided by the Exhibitor; or
(ii) Exhibitor fails to comply with the Contract, as determined by Frieze in its absolute discretion; or
(iii) Exhibitor ceases, or threatens to cease, to carry on business; or
(iv) the Fair is cancelled for any reason, other than for a Force Majeure Event.
Exhibitor may terminate the Contract at any time up to December 1, 2017, in which case Frieze shall have the right to retain the processing fee paid under Clause 4 above. If Exhibitor intends to terminate its Contract after December 1, 2017, it must give written notice of such intention to Frieze.  Any such notice to terminate will be subject to written acceptance by Frieze. Where the Exhibitor terminates pursuant to Frieze's written acceptance of its termination, the Exhibitor shall pay Frieze an amount equal to a percentage of the total cost of Exhibitor's Booth. This percentage shall vary depending on the date on which the Exhibitor gives such notice to Frieze.

Where the termination date falls between any of the relevant dates set out below the following percentages shall apply:

| Relevant dates | Percentage |
| --- | --- |
| After December 1, 2017 but before end of February 2, 2018 | 50.0% |
| After February 1, 2018 but before end of  March 1, 2018 | 75.0% |
| After March 1, 20178 | 100.0% |

**24. Consequence of termination:**
If Frieze terminates the Contract with an Exhibitor for any of the reasons set out in Clause 23 above, the Exhibitor shall leave the Fair Premises as soon as reasonably practicable, and in any event no longer than twelve (12) hours from the receipt of written notice to terminate, removing all objects at its own expense, following procedures set forth by Frieze, and Frieze shall be entitled to reallocate the space previously assigned to Exhibitor to any other exhibitor, and Frieze will have no further obligation to the Exhibitor.

**25. Applicable law:**
The Contract shall be governed by and construed in accordance with the internal substantive laws of the State of New York and, to the extent applicable, the federal laws of the United States of America, and in either case, without giving effect to the choice of law principles thereof. The parties agree to the jurisdiction of any court of competent located in the County of New York, State of New York, in relation to any dispute arising hereunder and waive the right to a jury trial in respect of such dispute.
If any of the provisions of the Contract requires judicial interpretation, it is agreed that the court interpreting or construing the same shall not apply a presumption that any provision shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who itself or through its agents prepared the same, it being agreed that all parties and their respective agents have participated in the preparation of the Contract and such other documents be referred to herein.

**26. Notices:**
For the purposes of the Contract, all notices or other communications required or permitted by the Contract shall be sent via electronic mail (an electronic mail message sent after 5pm New York time or on a weekend or a holiday shall be deemed delivered on the following business day), hand delivery (effective upon delivery), or certified first class postage-paid mail, return receipt requested, with delivery by first class mail deemed delivered three (3) business days after being delivered to the post office or put in an official post box, except notice sent internationally by first class mail shall be deemed delivered six (6) business days after being delivered to the post office or deposited in an official post box. Either party may designate a substitute address or addresses by notice to the other party. For purposes of the Contract, notice shall mean all notices except for its Application and customary business correspondence, which shall not be deemed a notice under the Contract.

Notices to Frieze shall be sent to:
Frieze Events Inc.
247 Centre St, 5th Floor
New York, NY 10013 USA
Email: friezenewyork@frieze.com

Notices to the Exhibitor shall be sent to the address or email address provided by Exhibitor in its Application.

**27. Labor Unions:**
Frieze may in its sole discretion require Exhibitor to employ or utilize only union employees, or to employ or utilize only contractors, subcontractors, consultants, vendors or others employing union employees to set up and/or disassemble Exhibitor's Booth, install or remove any object(s) or exhibit(s) at or from the Fair Premises, or for any other purpose at the Fair Premises in compliance with Frieze's directions.

**28. No Lease or Bailment:**
It is understood and agreed that the Contract shall not be deemed a lease, that no leasehold or tenancy is intended to be created hereby and that the Contract shall not be construed so as to create such a relationship between Frieze and Exhibitor. Exhibitor further agrees that the Contract shall not be construed so as to create a bailment with respect to the merchandise or other property which may be stored or displayed in the Exhibitor's Booth or at the Fair Premises, and Frieze shall have no liability for the safety or preservation thereof, other than as previously herein set forth. Exhibitor will not bring or permit to brought upon the Fair Premises any material which may be deemed to be "hazardous" by the Board of Fire Underwriters, and if found to be within said category, shall immediately remove the same from the Fair Premises.

**29. Entire Agreement; Amendments; Waivers:**
The Contract embodies the entire agreement between Exhibitor and Frieze with respect to the subject matter of the Contract and supersedes any and all prior agreements and understandings, written or oral, formal or informal between Frieze and Exhibitor. Each such party hereby acknowledges agrees that no other party, nor agent or attorney of any other party, or of any third party, has made any promise, representation, warranty or statement, whatsoever, express or implied, oral or written, not set forth in the Contract as an inducement to execute any document comprising the Contract, and further acknowledges that such party has not executed any document comprising the Contract in reliance upon any promise, representation, statement, warranty, inducement or condition not expressly set forth in the Contract. No extensions, changes, modifications, amendments or supplements to or of the Contract, of any kind whatsoever, shall be made or claimed by Frieze or Exhibitor, and no notices of any such extensions, changes, modifications, amendments or supplements made or claimed by Frieze or Exhibitor shall have any force or effect whatsoever unless the same shall be in writing and fully executed by Frieze and Exhibitor. No provision of the Contract shall be deemed waived by either party unless such waiver is in writing and signed by such party.

**30. Dispute Resolution:**   Notwithstanding any contrary provision of the Contract, all claims, disputes and other matters in question between Frieze and Exhibitor arising out of or relating to the Contract or the breach thereof ("disputes") shall first be submitted to negotiation and may, failing resolution, then be subject to mediation and arbitration as set forth below; provided, however, in all other cases, all legal and equitable rights and remedies provided at law and equity are reserved. Disputes claimed by either party must be made by written notice promptly upon the recognition of the event giving rise to such claim. When any dispute arises, Frieze and Exhibitor shall each appoint an executive officer, manager, member or partner (each, a "Principal") to meet for the purpose of resolving such dispute. If the Principals are able to reach an agreement, the dispute will be deemed resolved.
If after fifteen (15) days from the date the dispute arose such negotiations prove unsuccessful, in whole or in part, the parties agree first to try in good faith to settle the dispute by mediation administered by JAMS under its Commercial Mediation Procedures then if effect before resorting to arbitration. If the dispute cannot be settled by mediation, the parties agree to submit the dispute to binding arbitration in New York, NY in accordance with the Commercial Arbitration Rules of the JAMS then in effect. The party seeking arbitration shall transmit a written demand for arbitration to the other party (the "Written Demand") by sending the Written Demand, if to Frieze, to friezenewyork@frieze.com, and if to Exhibitor, to the e-mail address provided by Exhibitor in its Application. The Written Demand shall set forth the nature of the dispute, the amount involved, and the remedy sought. The arbitrator(s) shall have the authority to set the nature and scope of discovery. Any award rendered pursuant to an arbitration may include reasonable outside attorneys' fees and costs, shall be final and binding upon the parties and judgment upon such award may be entered in any court of competent jurisdiction. Under no circumstances may the arbitrator(s) amend, modify or supplement any provision of the Contract or make any award of punitive or exemplary damages. The arbitrator(s) shall apply applicable substantive New York State law without regard to the choice of law principles of such State.
Pending final resolution of any dispute, including arbitration, Exhibitor shall proceed diligently with performance of its obligations under the Contract to the extent such performance is unrelated to the dispute and the subject matter of the dispute does not inhibit the progress of such performance generally, and Exhibitor shall continue to make payments to Frieze in accordance with the Contract to the extent unrelated to the dispute. Such performance and payment by Exhibitor shall not operate to waive or estop

either party from pursuing the claim which gave rise to the dispute.

**31. Miscellaneous:**  (a) To the extent any provision of the Contract is found by a court of competent jurisdiction to be invalid or unenforceable, that provision notwithstanding, the remaining provisions of this Agreement shall remain in full force and effect and such invalid or unenforceable provision shall be deleted.
(b) The Contract and the rights of the parties hereunder may not be assigned by operation of law or otherwise by Exhibitor. Notwithstanding anything to the contrary herein, this Contract and any rights and obligations of Frieze hereunder may be assigned or delegated, in whole or in part, whether by operation of law or otherwise, by Frieze, without the consent of Exhibitor, to an affiliate of Frieze, or to any person who is a successor in interest of Frieze or an affiliate thereof in connection with the merger, business combination, corporate reorganization or a transfer or sale for a majority of the equity or voting interests or assets of Frieze or such affiliate, or a similar transaction or series of transactions. The Contract shall be binding upon and shall inure to the benefit of the parties hereto and the successors and permitted assigns thereof. The Contract is for the sole benefit of the parties hereto and their successors and permitted assignees and nothing herein expressed or implied will give or be construed to give any person,

other than the parties and such successors and permitted assignees, any legal or equitable rights hereunder (other than the provisions of Clause 10 (Indemnity).

(c) The Clause headings contained in the Contract are for convenience purposes only and will not in any way affect the meaning or interpretation of the Contract.