UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANE CAMPBELL GALLERY, INC. and JULIE N. CAMPBELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRIEZE EVENTS, INC.,<br><br>Defendant. | Case No. _____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Shane Campbell Gallery, Inc. and Julie N. Campbell, by their attorneys, bring this class action against Frieze Events, Inc. ("Frieze"), on their own behalf and on behalf of all others similarly situated, and allege as follows:

## I.    INTRODUCTION

1.      This is a class action filed on behalf of hundreds of art galleries and other persons ("Exhibitors") who paid substantial sums to participate in the 2018 Frieze Art Fair held on Randall's Island in New York.  Defendant Frieze, in form written contracts, promised each Exhibitor, among other things, to "use commercially reasonable efforts to provide common area … air conditioning."  Defendant breached this contractual promise by failing to properly design, test and regulate the ability of the air conditioning system at the Art Fair to maintain an environment within which Exhibitors could conduct commercial business.  Defendant has admitted it was aware in advance of an impending heatwave with expected "record-breaking temperatures" but was grossly negligent in preparing the site for such heat and ensuring a reasonably efficient air conditioning system.  As a direct result of the oppressive heat, art

customers, collectors, consultants and their clients and other attendees could not remain in the site and were forced to leave.   As such, the Exhibitors were prevented from engaging in their commercial endeavors and suffered substantial financial losses.  This lawsuit seeks rescission of the contracts the Exhibitors signed with Frieze, and reimbursement of all sums paid for participation at the Art Fair.

## II.      JURISDICTION AND VENUE

2.      This Court has personal jurisdiction over the parties in this case.

3.      Plaintiffs are citizens of Chicago, Illinois.

4.      This Court has personal jurisdiction over Frieze Events, Inc. because it is a New York corporation that intentionally avails itself of the laws of this State through its staging of the Frieze Art Fair held from May 2, 2018 to May 5, 2018, at Randall's Island Park, New York, NY., so as to render the exercise of jurisdiction by this Court consistent with traditional notions of fair play and substantial justice.

5.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Jurisdiction under CAFA is met because the proposed number of putative class members exceeds 100, at least one plaintiff and one defendant are citizens of different states, and the amount in controversy, including, but not limited to the aggregate amount of relief sought by absent class members, exclusive of interest and costs, exceeds $5 million.

6.      Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including Frieze's breach of its contracts with Plaintiffs and Class members occurred within this District.

7.      No other forum would be more convenient for the parties and witnesses to litigate this action.

### III.   PARTIES

8.     Plaintiff Shane Campbell Gallery, Inc. is a  corporation that is a citizen of the State of Illinois with a place of business located at 2021 S. Wabash Avenue, Chicago, IL 60616.

9.     Plaintiff Julie N. Campbell is an adult co-owner of Plaintiff Shane Campbell Gallery, Inc., and resides in Chicago, IL.

10.     Defendant Frieze is a New York corporation with a principal place of business located at 247 Centre Street, 5th Floor, New York, NY 10013.

### IV.   FACTUAL ALLEGATIONS

11.     The Frieze Art Fair ("Fair") is an art fair that has been held in New York every May since 2012.  In 2018, the Fair was scheduled to take place at Randall's Island Park from May 2, 2018 through May 5, 2018

12.     Plaintiff Shane Art Gallery has applied and been accepted to participate in the Fair each year since its inception.

13.     For 2018, Frieze advertised to galleries and artists as follows: "Introducing a fresh layout, new curators, and programs, Frieze New York 2018 brought together more than 190 galleries from 30 countries, showcasing the world's most significant artists, a series of talks, and the city's most talked about restaurants, all in a bespoke structure in Randall's Island Park."

14.     The new structure for the Fair utilized by Frieze differed in significant respects from prior venues.  In particular, instead of one long, snaking tent, Frieze installed many separate

tents forming discrete sections.  The air conditioning vents that had previously been located on the floor were relocated to the upper levels of the tents.

15.     Plaintiffs entered into a contract entitled "Exhibition Terms and Conditions" (the "Contract") with Frieze to become an Exhibitor at the Fair.  A copy of the Contract is attached hereto as **Exhibit A**.

16.     The Contract is a standard form contract used by Frieze in each transaction with members of the Class.

17.     Frieze entered into the Contract with approximately 190 Exhibitors from the United States and dozens of other countries for the Fair.  Each Exhibitor paid Frieze approximately $78.50 per square foot for booths ranging from approximately 431 to 1,292 square feet to participate in the Fair.  Frieze also charged a surcharge of up to 15% for "privileged locations" such as corner booths and booths on the open squares.

18.     The Contract provided, *inter alia*, as follows:

        a.      Exhibitors were prohibited from participating in any other fairs located in New York for the duration of the Fair, Contract at ¶ 7;

        b.      Exhibitors were required to keep their booths sufficiently manned during the time the Fair was open, *id*.;

        c.      Frieze had the sole and absolute discretion to place the location of each Exhibitor's booth at the Fair, *id*. at ¶ 9;

        d.      Frieze had the right to enter any part of the Fair premises at any time to execute work or repairs, or for other purposes, *id*.;

        e.      Frieze agreed it would be liable for damages incurred by any Exhibitor for damage, loss or inconvenience occurring during the course of, or as the result of, any such work,

4

repairs or other entry where proximately caused by the gross negligence of Frieze or its representatives, officers, employees, agents or contractors, *id*.;

       f.      Frieze agreed to use commercially reasonable efforts to provide common area air conditioning, *id*. at ¶ 18;

       g.      Exhibitors were prohibited from installing their own power or connection, *id.*

19.     Weather forecasts prior to the beginning of the Fair indicated the weather would be hot and sunny with temperatures approaching the high 80s degrees.

20.     According to Accuweather, the outdoor temperature on Randall's Island reached 90 degrees on May 2, 93 degrees on May 3, and 84 degrees on May 4, 2018.

21.     Frieze failed to properly design, test and regulate the ability of the air conditioning system at the Fair to adequately maintain an environment within which to conduct commercial business.

22.     Within the first hour of the opening day, the heated temperatures in the tent were oppressive.

23.     Frieze was aware of the problem but took no action to correct it.

24.     The temperature continued to rise, to the point that many Exhibitors, their staff, other attendees such as collectors, consultants and curators were unable to bear the heat and were forced to exit the tent.

25.     Collectors and consultants who had made appointments with Plaintiffs to visit their exhibit notified Plaintiffs that they could not stay there due to the heat; others never even kept their appointments.

26.     Many people became ill from the conditions.

27.     Frieze did not adequately respond to the problems resulting from the high temperatures within the tent and breached its obligation to use commercially reasonable efforts to provide common area air conditioning.

28.     Frieze was grossly negligent in failing to provide Exhibitors and other attendees with a safe, clean and healthy environment within the exhibition tent.

29.     Frieze's gross negligence resulted in damages incurred by Plaintiffs and other Exhibitors.  Plaintiffs and other Exhibitors all paid substantial fees to Frieze in consideration of obtaining exhibit space to conduct their businesses.

30.     Following the conclusion of the Fair, Plaintiffs sought to negotiate a return of all fees paid to Frieze in connection with their participation in the Fair.

31.     In response, Frieze offered to return two and a half percent (.025%) of the fees that Plaintiff had paid.

32.     Frieze's offer is ludicrously insufficient to compensate Plaintiffs and other Exhibitors for Frieze's gross negligence as described above.

## V.     CLASS ALLEGATIONS

33.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated United States art galleries and individuals who entered into the Contracts with Frieze to participate in the Fair that took place in Randall's Island Park from May 2, 2018 through May 5, 2018 (the "Class").

34.     Excluded from the Class are the judges assigned to this case and the members of their immediate families, officers and directors of Frieze; members of the immediate families of the officers and directors of Frieze; Frieze's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

35.     Plaintiffs seek to certify each Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

36.     At this time, Plaintiffs do not know the exact number of the Class members. Plaintiffs allege that there were approximately 190 Exhibitors participating in the Fair.  Plaintiffs believe that members of the Class are so numerous that joinder of all members is impracticable.

37.      There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include whether Frieze breached the Contract with Plaintiffs and members of the Class.

38.     Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, sustained damages from Frieze's wrongful conduct.

39.     Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs is similarly situated with, and has suffered similar injuries as, the members of the Class they seek to represent.  Plaintiffs are each an adequate representative of the Class because their interests do not conflict with the interests of the Class members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs have no interests adverse to those of the Class members, and will vigorously prosecute this litigation.

40.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  No Class member has a substantial interest in individually controlling the prosecution of a separate action.

41.     The prerequisites to maintaining a class action for injunctive or equitable relief are met as Frieze has acted or refused to act on grounds generally applicable to the Class, thereby

making appropriate final injunctive or equitable relief with respect to the Class as a whole.

42.     Upon information and belief, there are no pending lawsuits concerning the products at issue in this case.  Concentration of the litigation concerning this matter in this Court is desirable, and the difficulties likely to be encountered in the management of a class action are not great.  The resolution of the claims of all Class members in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation.

43.     The prosecution of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Frieze.

44.     Frieze's conduct is generally applicable to the Class as a whole and Plaintiffs seek remedies with respect to the Class as a whole.  As such, Frieze's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

45.     The Class is specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action.  Notice to the Class can be made through various means, such as in-store leaflets, website notices, Facebook notices, notices on the labels of the packages, and/or direct notice to those consumers for which Frieze knows the e-mail or physical mailing address.

## VI.     CAUSES OF ACTION

46.     The allegations in each Cause of Action are repeated and realleged in every other Cause of Action as if set forth in full therein.

## COUNT 1

### Breach of Contract

47.     Frieze entered into the Contract with Plaintiffs and other members of the Class.

48.     The Contract set forth affirmations of fact or promises by Frieze relating to the Fair

and became part of the basis of the bargain.

49.     Plaintiffs and members of the Class entered into the Contract.  Plaintiffs and each member of the Class paid substantial sums to Frieze in exchange for participating in the Fair as an Exhibitor.

50.     Frieze breached the Contract.  This breach resulted in damages to Plaintiffs and other members of the Class, who did not receive the services promised by Frieze.

51.     As a proximate result of the breach of the Contract by Frieze, Plaintiffs and the other members of the Class did not receive the services promised in return for the substantial sums they paid to Frieze to participate in the Fair.  Plaintiffs and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.  Among other things, Plaintiffs and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT 2

### Unjust Enrichment

52.     As a result of Frieze's gross negligence, Frieze was enriched at the expense of Plaintiffs and the other members of the Class through the payment of the price for becoming an Exhibitor at the Fair.

53.     Under the circumstances, it would be against equity and good conscience to permit Frieze to retain the ill-gotten benefits that it received from Plaintiffs and the other members of the Class, in light of the fact that the services purchased by Plaintiffs and the other members of the Class were not what Frieze promised.  Thus, it would be unjust or inequitable for Frieze to retain the benefit without restitution to Plaintiffs and the other members of the Class for the monies paid

to Frieze.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment on behalf of themselves and the proposed Class providing such relief as follows:

A.      Certification of the Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiffs as Class representatives; and appointment of their undersigned counsel as counsel for the Class;

B.      A declaration that Frieze is financially responsible for notifying members of the Classes of the pendency of this suit;

C.      Rescission of the Contracts that Plaintiffs and Class members entered into with Frieze;

D.      An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Frieze as a result of the grossly negligent conduct alleged herein;

E.      Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

F.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

G.      Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs and the Class members hereby demand a trial by jury.

DATED: June 8, 2018

s/ Lewis J. Saul
Lewis Saul & Associates, P.C.
Lewis J. Saul
Edward A. Coleman (*pro hac vice* forthcoming)
29 Howard Street, 3rd Floor
New York, NY 10013
T: (212) 376-8450
F: (212) 376-8447
lsaul@lewissaul.com
ecoleman@lewissaul.com

**FRANCIS & MAILMAN, P.C.**
James A. Francis (*pro hac vice* forthcoming)
David A. Searles (*pro hac vice* forthcoming)
Land Title Building, Suite 1902
100 South Broad Street
Philadelphia, PA 19110
Tel. (215) 735-8600
Fax. (215) 950-8000