**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  | X |  |
| --- | --- | --- |

SHANE CAMPBELL GALLERY, INC. and JULIE N. CAMPBELL, on behalf of themselves and all others similarly situated,

Civil Action No.   18-cv-5134

                        Plaintiff,

        v.

FRIEZE EVENTS, INC.,

                        Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ..................................................................................3

III.  ARGUMENT .........................................................................................................5

    A.  Standard of Review..................................................................................7

    B.  The First Cause of Action for Breach of Contract Should Be Dismissed ..............8

        1.  The Contract Disclaims All Liability for Weather Conditions...................9

        2.  The Complaint Fails to Allege Facts to Support a Claim  That Frieze Acted in a Commercially Unreasonable Manner...........................12

        3.  The Complaint Fails to Plead Damages Attributable to the Alleged Breach of Contract ...................................................................................14

        4.  Plaintiff Julie Campbell's Breach of Contract Claim Should Be Dismissed Because She is Not a Party to the Contract..............................18

    C.  The Second Cause of Action for "Unjust Enrichment" Should Be Dismissed Because a Contract Governs the Subject Matter of Plaintiffs' Claims .................................................................................................18

IV.  CONCLUSION.....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allco Fin. Ltd. v. Klee,*
  861 F.3d 82 (2d Cir. 2017)........................................................................................7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................7

*ATSI Commc'ns, Inc. v. Shuar Fund Ltd.,*
  493 F.3d 87 (2d Cir. 2007).......................................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................7, 14

*Berman v. Sugo LLC,*
  580 F. Supp. 2d 191 (S.D.N.Y. 2008)....................................................................18

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002).....................................................................................3

*Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,*
  516 N.E. 2d 190 (1987)..........................................................................................19

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.,*
  81 N.Y.2d 821, 611 N.E.2d 282, 595 N.Y.S.2d 381 (1993)......................10, 11, 12

*Deutsche Lufthansa AG v. Boeing Co.,*
  No. 06 CV 7667 (LBS), 2007 WL 403301 (S.D.N.Y. Feb. 2, 2007) .....................12

*Frontline Processing Corp. v. Merrick Bank Corp.,*
  No. 13 CIV. 3956, 2014 WL 837050 (S.D.N.Y. Mar. 3, 2014) .............................11

*Furman v. Wells Fargo Home Mortg. Inc.,*
  26 Misc. 3d 1241(A), 907 N.Y.S.2d 437 (Sup. Ct. 2010) ......................................13

*Gallop v. Cheney,*
  642 F.3d 364 (2d Cir. 2011).....................................................................................20

*Gardner v. Owasco Riv. Ry,*
  142 A.D.2d 61, 534 N.Y.S.2d 819 (3rd Dep't 1988) .............................................10

*Golub Assocs. Inc. v. Lincolnshire Mgmt., Inc.,*
  1 A.D.3d 237, 767 N.Y.S.2d 571 (1st Dep't 2003) ...............................................19

*Goodstein Const. Corp. v. City of New York*,
    80 N.Y.2d 366, 604 N.E.2d 1356 (1992) .................................................................16

*Holland Loader Co., LLC v. FLSmidth A/S*,
    No. 1:16-CV-6706-GHW, 2018 WL 2078034 (S.D.N.Y. May 2, 2018) ...............13

*In re Ivan F. Boesky Sec. Litig.*,
    825 F. Supp. 623 (S.D.N.Y.1993), aff'd, 36 F. 3d 255 (2d Cir.1994) ...................15

*JFK Holding Co. LLC v. City of New York*,
    21 N.Y.3d 722, 999 N.E.2d 1161 (2013) .............................................................13

*Krause v. Forex Exch. Mkt., Inc.*,
    12 Misc.3d 1192(A), No. 05–601854, 2006 WL 2271274 (N.Y.Sup.Ct. Mar.
    1, 2006) ...............................................................................................................19

*Lubell v. Samson Moving & Storage, Inc.*,
    307 A.D.2d 215, 763 N.Y.S.2d 30 (1st Dep't 2003) ...........................................10

*MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*,
    157 F.3d 956 (2d Cir. 1998) ...............................................................................19

*Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*,
    52 F. Supp. 3d 601, 620 (S.D.N.Y. 2014), *aff'd sub nom. Maria Re Ltd. ex rel.*
    *Varga v. Am. Family Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015) ...................19

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
    930 F. Supp. 2d 532 (S.D.N.Y. 2013) ....................................................................9

*New Shows, S.A. de C.V. v. Don King Prods., Inc.*,
    210 F.3d 355 (2d Cir. 2000) ...............................................................................16

*New Shows, S.A. de C.V. v. Don King Prods., Inc.*,
    No. 95 CIV. 8851 (RPP), 1999 WL 553780 (S.D.N.Y. July 29, 1999), aff'd,
    210 F.3d 355 (2d Cir. 2000) ...............................................................................15

*Ninacci Diamond & Jewelry Co. v. R.A.V. Investigative Servs., Inc.*,
    No. 95 Civ. 9302 (AGS), 1998 WL 299926 (S.D.N.Y. June 9, 1998), aff'd,
    173 F.3d 845, 1999 WL 220107 (2d Cir. 1999) .................................................10

*Pettibone v. WB Music Corp.*,
    No. 17-CV-2569 (RJS), 2018 WL 1441395 (S.D.N.Y. Mar. 21, 2018) ..................8

*Rudman v. Cowles Communications, Inc.*,
    280 N.E.2d 867 (1972) .......................................................................................15

*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2000) ...............................................................................16

-iii-

*Stahl Management Corp. v. Conceptions Unlimited*,
    554 F.Supp. 890 (S.D.N.Y.1983) ............................................................................15

*Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*,
    No. 06 CIV 3915, 2008 WL 4179235 (S.D.N.Y. Sept. 10, 2008)....................................15, 16

*Stuart Rudnick, Inc. v. Jewelers Protection Servs., Ltd.*,
    598 N.Y.S.2d 235 194 A.D.2d 317 (1st Dep't 1993) ............................................................10

*Tasini v. AOL, Inc.*,
    505 F. App'x 45 (2d Cir. 2012) ............................................................................18

*Vista Food Exch., Inc. v. BenefitMall*,
    138 A.D. 3d 535, 536, 31 N.Y.S.3d 9 (N.Y. App. Div.), leave to appeal
    denied, 28 N.Y.3d 902, 63 N.E.3d 71 (2016) ............................................................14, 16, 17

*Washington v. Kellwood Co.*,
    No. 05-CV-10034 (SN), 2016 WL 3920348 (S.D.N.Y. July 15, 2016), aff'd,
    714 F. App'x 35 (2d Cir. 2017), cert. denied, 138 S. Ct. 2029, 201 L. Ed. 2d
    280 (2018) ............................................................................17

## Other Authorities

Fed. R. Civ. P. 8(a)(2) ............................................................................7

Fed. R. Civ. P. 12(b)(6)............................................................................1, 3, 7

Defendant Frieze Events, Inc. ("Defendant" or "Frieze), through the undersigned counsel, respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the First Amended Class Action Complaint ("Amended Complaint" or "FAC") of Plaintiffs Shane Campbell Gallery, Inc. ("SCG") and Julie N. Campbell ("Campbell") (collectively, "Plaintiffs").

## I.      **INTRODUCTION**

Frieze is a media and events company that, among other things, operates the Frieze Art Fair.  The Frieze Art Fair is an international contemporary art fair that has been held in London, New York, and starting in 2019, Los Angeles.  Frieze New York has taken place in early May each year since 2012 on Randall's Island, where Frieze arranges for temporary structures to be erected with a leasable common area. Galleries from all over the world rent space to display their art at the fair.  Participating galleries pay a rental fee for a booth within the temporary structures.  Frieze New York 2018 was held over five days, from May 2 through 6, 2018.  Approximately 190 galleries displayed their art at Frieze New York 2018 (the "Galleries"), including Plaintiff SCG.

The New York City area was struck with a "record-breaking" heatwave on the first two days of the fair, May 2 and 3.  Plaintiffs' lawsuit seeks "rescission" of the Contract between SCG and Frieze and "reimbursement of all sums paid for participation" in Frieze New York 2018 because they claim that some collectors and consultants that made appointments with Plaintiffs left due to the heat, or never came as a result of the heat wave.

Yet, the Contract with Plaintiff SCG[1] (and every other Gallery at Frieze New York 2018) expressly disclaimed liability for weather conditions as well as any failure or interruption in air

---

[1]      For ease of reference in this Motion, Frieze may refer to "Plaintiffs."  However, Plaintiff Campbell is not a party to the Contract attached to the Amended Complaint, but only a "co-owner of Plaintiff Shane Campbell Gallery, Inc."  (FAC ¶ 9, Ex. A).  As set forth below, this fact alone merits dismissal of Plaintiff Campbell's claims.

conditioning.  Even if the Contract did not have these express disclaimers, Plaintiffs' breach of contract claims are based entirely on the conclusory allegation that Frieze was "grossly negligent" or did not exercise "commercially reasonable" efforts to provide air conditioning.  Rather than supply supporting factual allegations, Plaintiff merely concludes that Frieze was grossly negligent because it was hot during a "record-breaking" heatwave.  These conclusory allegations fall far short of what is required to overcome a limitation of liability under New York law.  Moreover, even if Plaintiffs could plausibly plead a breach of the Contract by Frieze, they are not entitled to "rescission" and their request for full reimbursement bears no relation to their alleged harm and is not damages recoverable for breach of contract under New York law.[2]

Plaintiffs' claim for unjust enrichment also fails.   New York law is clear that claims for unjust enrichment are precluded by the existence of a valid contract that governs the same subject matter.  By Plaintiffs' own admission, a valid contract governs the subject matter of the Amended Complaint, and their unjust enrichment claim alleges the same facts as their breach of contract claim.  It is therefore barred by New York law.  Even were Plaintiff's unjust enrichment claim not barred, the Amended Complaint pleads no facts to support the notion that "equity and good conscience require restitution" of the price Plaintiff SCG paid to participate in Frieze because it was hit with a record-breaking heatwave.

Plaintiffs' disappointment with the weather at Frieze New York 2018 may be understandable, but it cannot be converted into a cognizable claim against Frieze.   Moreover, as pleaded in the Amended Complaint, Frieze has made offers of compromise to all Galleries who felt affected by the heat.  Plaintiff SCG is the only Gallery that eschewed this offer to pursue a lawsuit.  Plaintiffs' attempt to leverage their individualized grievance through a federal class action

---

[2]      New York law governs the Contract at issue.  (FAC, Ex. A, ¶ 25.)

(involving foreign residents who cannot be included in any class) fails at the outset because Plaintiffs' claims lack merit.

## II.    <u>FACTUAL BACKGROUND</u>

Frieze has operated the Frieze Art Fair on Randall's Island in New York every May since 2012. (FAC, ¶ 11.) Frieze New York 2018, like each New York fair before it, took place in temporary structures—a series of tents—designed to be able to showcase the work of approximately 190 artists from all over the world, as well as a series of talks and food options for guests. (*Id.* ¶¶ 13-14.)

Frieze New York 2018 was held over five days from May 2 to May 6, 2018.[3] The first two days were struck by an unprecedented heatwave with "record-breaking temperatures." (FAC, ¶ 1.) According to the Amended Complaint, which cites Accuweather, the temperature on Randall's Island reached 90 degrees on May 2, 93 degrees on May 3, and 84 degrees on May 4, 2018. (*Id.*, ¶ 20.) Plaintiff does not include a temperature for May 5, 2018, but the same source used by Plaintiff indicates a temperature of 76 degrees.[4] The record-breaking 90+ degree heat for the first two days of Frieze New York 2018 exceeded "[w]eather forecasts prior to the beginning of the Fair" which only called for "temperatures approaching the high 80s." (*Id.*, ¶ 19.)

---

[3]    The Amended Complaint incorrectly lists May 5 as the last day of the fair. *Compare* FAC ¶ 11 *with* https://frieze.com/fairs/frieze-new-york/visitor-information.

[4]    *See* https://www.accuweather.com/en/us/randalls-island-ny/10035/may-weather/2627505?monyr=5/1/2018. Because the Amended Complaint refers to and relies upon this source as a basis for its claim, it is incorporated by reference and may be considered on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Even were this source not incorporated by reference, the Court may nevertheless consider it where the Amended Complaint "relies heavily upon its terms and effect," which renders it "integral" to the complaint. *Id.* "[G]enerally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. . . . Accordingly, '[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'" *Id.* (internal citations omitted).

Plaintiffs allege that the temperature inside the temporary structures on the opening day of Frieze New York 2018 (May 2) started very high, and continued to rise throughout the day.  (FAC, ¶¶ 22-24.)  The Amended Complaint pleads no details about the conditions on the second, third, fourth, or fifth days of the fair (May 3 through 6).  Plaintiffs allege that the high temperatures plaguing the New York City area disrupted their business because "[c]ollectors and consultants" that had booked appointments with Plaintiffs decided not to stay or did not show at all as a result of the heat.  (*Id.*, ¶¶ 24-25.)  The Amended Complaint does not plead that SCG failed to make *any* sales, or if sales just disappointed their expectations.  Nor does it plead that the fair did not occur each day from May 2 through May 6.

The Amended Complaint contains no factual allegations to support the implausible conclusion that Frieze is responsible for any claimed disruption in Plaintiffs' business, or that Plaintiffs are entitled to a complete refund of their rental fee because they did not make as many sales to collectors as they had hoped.  As the Amended Complaint admits, some collectors did not even attend the event because of the weather outside.  (FAC ¶ 25 ("Collectors and consultants who had made appointments with Plaintiffs to visit their exhibit notified Plaintiffs that they could not stay there due to the heat; *others never even kept their appointments*.") (emphasis added). Plaintiffs allege that Frieze failed to "use commercially reasonable efforts" to "design, test and regulate the ability of the air conditioning system," (FAC, ¶ 1, 27), "took no action to correct" the rising temperatures on the first day of the fair, (FAC, ¶ 23) and that Frieze was "grossly negligent in failing to provide . . . a safe clean and healthy environment,"  (FAC, ¶ 28), but these conclusions are unsupported by any facts other than that it was uncomfortably hot *throughout all of New York* on May 2.

The "form contract" attached to the Amended Complaint (the "Contract") expressly disclaims all liability relating to weather conditions at Frieze New York 2018:

> **Frieze will be under no liability to Exhibitor whatsoever** (whether in contract, tort (including negligence), breach of statutory duty, restitution or otherwise) for any injury, death, damage (including damage or loss to any artwork) or direct, indirect or consequential loss (all three of which terms include, without limitation, pure economic loss, loss of profits, loss of business, depletion of goodwill and like loss) **howsoever caused arising out of or in connection with the Fair, including without limitation,** *rain, wind or other weather conditions* . . . except if directly caused by the gross negligence or willful misconduct of Frieze.

(FAC, Ex. A, § 13 (emphasis added).)  This provision disclaims liability for weather conditions such as heat, unless the conditions are caused by the gross negligence or willful misconduct of Frieze.  The Amended Complaint contains only conclusory allegations of "gross negligence" and thus fails to raise even a plausible inference to avoid this limitation of liability.

The Contract also contains a force majeure clause. It confirms that Frieze is under no liability for any "limitation of the Fair" caused by "extreme weather."  (FAC, Ex. A, § 22.)  And, while the Contract requires Frieze to "use commercially reasonable efforts to provide common area lighting, heating and air conditioning," it also states that "shall not be liable for any loss or damage due to failure or interruption of any service," without regard to the negligence or fault of any party for such service failure.  (FAC, Ex. A, § 18.)

On June 7, 2018, as a sign of good will and client service, Frieze made Galleries who participated in Frieze New York 2018 an offer of compromise if they felt that they were affected by the heat.  (FAC, ¶ 30.)  Plaintiff SCG has not accepted this offer.  Rather, on June 8, 2018, it filed this putative class action lawsuit.

## III.  <u>ARGUMENT</u>

The Amended Complaint fails to state a claim against Frieze for breach of contract, unjust enrichment, or any other legal theory.

Plaintiffs cannot assert a valid claim for breach of contract because the Contract expressly disclaims Frieze's liability for all claims arising out of "weather conditions" unless caused by willful misconduct or gross negligence.  Plaintiffs do not allege that Frieze engaged in any "willful" conduct, and cannot allege facts to meet the high standard for "gross negligence" necessary to avoid this broad limitation of liability under New York law.

Plaintiffs' allegation that Frieze breached the Contract by failing to "use commercially reasonable efforts" to control for the record-breaking temperature does not save their breach of contract claim.  First, it does not affect the broad limitation of liability for weather events.  Second, even if it did, a plaintiff may not simply incant the lack of commercially reasonable efforts, but rather must explain how Frieze failed to act in a commercially reasonable manner.  For example, the Amended Complaint does not allege what would have been commercially reasonable.  This is made all the more problematic because the Amended Complaint admits that the record-breaking temperatures on the first two days of the fair exceeded the predicted forecasts.  (FAC, ¶ 19.)  Moreover, as noted, even if the air conditioning failed to control for the heat, the Contract expressly disclaims Frieze's liability for "failure or interruption" of the air conditioning system.

Even if Frieze *could* be liable for the weather conditions at Frieze New York 2018, Plaintiffs fail to plead another essential element of their contract claim—damages.   Plaintiffs' "lawsuit seeks rescission of the contract the [Galleries] signed with Frieze, and reimbursement of all sums paid for participation in the fair."  (FAC, ¶ 1.)  But Plaintiffs are not entitled to rescission, and their Amended Complaint admits that "reimbursement of all sums paid" does not qualify as general or consequential damages recoverable for breach of contract under New York law.

Plaintiffs' unjust enrichment claim is barred under New York law because of the existence of the Contract, as well as the fact that it is based on the same facts as their breach of contract

claim.  Even were it not barred, Plaintiffs plead no facts to support that "equity and good conscience require restitution" of the rental fee Plaintiffs paid to participate in Frieze New York 2018.

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide the grounds upon which [the] claim rests[.]" *ATSI Commc'ns, Inc. v. Shuar Fund Ltd*., 493 F.3d 87, 98 (2d Cir. 2007); see also Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *ATSI Commc'ns*, 493 F.3d at 98.  That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  If a plaintiff fails to allege sufficient facts to "nudge [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  *Id*. at 570.

"For the purpose of a motion to dismiss under Rule 12(b)(6), the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 98 n.13 (2d Cir. 2017).  Here, this includes the Contract and weather sources cited by Plaintiffs in the Amended Complaint.

**B.**     **The First Cause of Action for Breach of Contract Should Be Dismissed**

The Amended Complaint fails to state a claim for breach of contract.  Under New York law, which governs the Contract at issue here (*see* FAC, Ex. A, § 25), the elements of breach of contract are: "(1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach." *Pettibone v. WB Music Corp.*, No. 17-CV-2569 (RJS), 2018 WL 1441395, at *3 (S.D.N.Y. Mar. 21, 2018) (quoting *RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156 Fed.Appx. 349, 350-51 (2d Cir. 2005)).

In determining a party's obligations under a contract, "the initial interpretation of a contract is a matter of law for the court to decide."  *Id.* (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)).   Where a contract is unambiguous, i.e. "the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference in opinion," a court may construe it as a matter of law.  *Id.* (*citing Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 69 (2d Cir. 2014); *Metro. Life Ins. Co. v. RJR Nabisco Inc.*, 906 F.2d 884, 889 (2d Cir. 1990)).  "Contracts should be read as a whole to determine whether an ambiguity exists." *Id.* (*quoting Hirth v. Am. Ins. Co.*, No. 15-cv-3245 (GWG), 2016 WL 75420, at *3 (S.D.N.Y. Jan. 7, 2016)).  "The language of a contract is not made ambiguous simply because the parties urge different interpretations."  *Id.* (*quoting Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir. 2005) (citation and internal quotation marks omitted).  "[A] court should not find language ambiguous on the basis of the interpretation urged by one party where that interpretation would 'strain the contract language beyond its reasonable and ordinary meaning.'"  *Id.* (*citing Metro. Life*, 906 F.2d at 889).

Plaintiffs' proffered reading of the Contract—that Frieze agreed to assume the risk of the record-breaking temperatures on May 2 and 3, 2018 (or any other weather condition)—is directly

contradicted by its unambiguous terms. The Contract disclaims liability on the part of Frieze for damages relating to weather conditions, and the Amended Complaint alleges no facts amounting to "gross negligence" that would invoke an exception to that limitation. Further, while Frieze was required to use commercially reasonable efforts to provide air conditioning, the Contract also disclaims all liability on the part of Frieze for damages arising out of the failure or interruption of any air conditioning service. There is no plausible interpretation of the Contract that could lead to liability for Frieze, and, in any event, Plaintiff fails to allege damages recoverable under New York law. Accordingly, Plaintiffs' claim for breach of contract should be dismissed.

### 1.    The Contract Disclaims All Liability for Weather Conditions

Plaintiffs' breach of contract claim is based on the effect of a heat wave. This claim cannot stand in light of the Contract's express limitation of liability for claims arising out of "weather conditions." Plaintiffs have not, and cannot, plausibly allege that Frieze engaged in "willful misconduct" or was "grossly negligent" as required to escape this limitation of liability under New York law. As a result, their claim for breach of contract should be dismissed.

Section 13 of the Contract, entitled "Liability," states that "Frieze will be under no liability whatsoever . . . for any injury . . . direct, indirect or consequential loss . . . howsoever caused arising out of or in connection with the Fair, ***including without limitation, rain, wind or other weather conditions***." (FAC, Ex. A, § 13.) Such limitations of liability are valid and enforceable under New York law. *Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd*., 930 F. Supp. 2d 532, 544 (S.D.N.Y. 2013) (citing *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F.Supp.2d 436, 449–50 (S.D.N.Y.2003) ("The New York Court of Appeals has declared that '[a] limitation on liability provision in a contract represents the parties' Agreement on the allocation of risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.'")). The limitation of liability in the Contract applies to *any* claim,

"except if directly caused by the gross negligence or willful misconduct of Frieze."  (FAC, Ex. A, § 13.)  No such exception applies here, and Plaintiffs' claim for breach of contract should be dismissed.

A party claiming willful misconduct must show an "intentional act of unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm would result."  *See Gardner v. Owasco Riv. Ry*, 142 A.D.2d 61, 64, 534 N.Y.S.2d 819 (3rd Dep't 1988).  And, when gross negligence is invoked strategically to avoid an agreed-upon limitation of liability, as Plaintiffs attempt to do here, New York applies a more exacting standard than ordinary gross negligence amounting to similarly intentional acts.

As the New York Court of Appeals has held, when "[u]sed in this context, 'gross negligence' differs in *kind*, not only degree, from claims of ordinary negligence.  It [must] evince[] a *reckless disregard for the rights of others or 'smack[]' of intentional wrongdoing*."  *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823-24, 611 N.E.2d 282, 284, 595 N.Y.S.2d 381, 383 (1993) (emphasis added).  New York courts applying the *Colnaghi* rule have reinforced this distinction.  For example, the First Department declared that "the failure to properly maintain, in working order, a video camera overseeing the safety deposit boxes in which plaintiff stored its jewelry, while clearly negligent, and *even grossly negligent as used in other contexts*, did not meet [the *Colnaghi* standard]." *Stuart Rudnick, Inc. v. Jewelers Protection Servs., Ltd.*, 598 N.Y.S.2d 235, 236 194 A.D.2d 317, 317 (1st Dep't 1993) (emphasis added); *see also Lubell v. Samson Moving & Storage, Inc.*, 307 A.D.2d 215, 217, 763 N.Y.S.2d 30, 32 (1st Dep't 2003) (enforcing a release of liability where "there is no indication that defendant's negligence, if any, 'differed in kind' from acts of ordinary negligence"); *Ninacci Diamond & Jewelry Co. v. R.A.V. Investigative Servs., Inc.*, No. 95 Civ. 9302 (AGS), 1998 WL 299926, at *5 (S.D.N.Y. June 9,

1998), aff'd, 173 F.3d 845, 1999 WL 220107 (2d Cir. 1999) ("[W]hile [the defendant] may have been negligent ..., these failings do not rise to the level of 'gross negligence' required to void a contractual waiver of liability.").

The Amended Complaint contains no allegations of willful or intentional acts sufficient to claim either exception to the Contract's limitation of liability for weather conditions.  Instead, it only contains the conclusory allegation that Frieze was "grossly negligent in preparing the site for such heat and ensuring a reasonably efficient air conditioning system."  (FAC, ¶ 1; *see also id.* ¶¶ 28, 29, 32, 52 (conclusory allegations that Frieze "was grossly negligent" and that the "gross negligence" resulted in damages).  Such conclusory allegations of ordinary mistake will not meet the more basic gross negligence standard[5] much less the *Colnaghi* standard required for a case of this type.  Plaintiffs fail the more basic gross negligence standard because they offer no explanation of how Frieze could have been "grossly negligent" by failing to adequately prepare for or react to unprecedented and unpredicted weather conditions.  The mere fact of record-setting heat (that even weather forecasts in the days before the event failed to predict) destroys the plausibility of an allegation that Frieze was grossly negligent in providing air conditioning.  And, they cannot

---

[5]      Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim. *See Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13 CIV. 3956, 2014 WL 837050, at *5 (S.D.N.Y. Mar. 3, 2014).  Plaintiffs' only supporting allegations of gross negligence is the fact that it was hot inside the tent at New York Frieze 2018.  Further, far from providing any support for its conclusions, the allegations in the Amended Complaint demonstrate that Frieze *could not* have been grossly negligent in assessing or providing measures to address the weather conditions expected for Frieze New York 2018.  According to Plaintiffs' own sources, the temperatures of 90 and 93 degrees Fahrenheit on May 2 and 3, 2018, were *more than 20 degrees* above the historical average.  *See* https://www.accuweather.com/en/us/randalls-island-ny/10035/may-weather/2627505?monyr=5/1/2018.  The Amended Complaint even admits that "[w]eather forecasts prior to the beginning of the Fair" failed to predict the record-breaking 90 degree temperatures.  (FAC, ¶¶ 19-20.)

plausibly allege that any action of Frieze that "smacks of intentional wrongdoing" to satisfy the more stringent *Colnaghi* standard that applies here.

"New York Courts set the bar quite high in placing misconduct within the exceptions, 'demanding nothing short of ... a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts.'" *Deutsche Lufthansa AG v. Boeing Co*., No. 06 CV 7667 (LBS), 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007).  Plaintiffs can never plead facts to plausibly suggest that Frieze acted in an intentional, callous manner to meet the high bar necessary to avoid the contractual limitation of liability for weather conditions.  Accordingly, Plaintiffs' Amended Complaint should be dismissed with prejudice

**2.      The Complaint Fails to Allege Facts to Support a Claim
That Frieze Acted in a Commercially Unreasonable Manner**

The conclusory allegations that Frieze failed to use "commercially reasonable" efforts to provide air conditioning do not save Plaintiffs' breach of contract claim.  Whether or not Frieze exercised commercially reasonable efforts is not relevant to the limitation of liability for weather conditions.   And, to the extent that Plaintiffs' claims relate to the failure of the air conditioning to sufficiently address the weather conditions, the Contract disclaims all liability on the part of Frieze for this as well:

> Frieze will use commercially reasonable efforts to provide common area lighting, heating and air conditioning, ***but shall not be liable for any loss or damage due to failure or interruption of any service***.

(FAC, Ex. A, § 18.)  Thus, the Contract contemplates that the air conditioning or other electrical services may fail despite Frieze's commercially reasonable efforts, and applies this limitation of liability without regard to the fault of any party for such service failure.

Even were Frieze's "commercially reasonable" efforts relevant to the question of whether it is liable for weather conditions or a failure of air conditioning, the Amended Complaint's allegations are wholly conclusory and raise no plausible inference that Frieze acted in a "commercially unreasonable" manner in preparing air conditioning for Frieze New York 2018. "A court's evaluation of a party's compliance with a 'commercially reasonable efforts' requirement does not involve a hindsight comparison of the party's actual conduct to that which could have been undertaken to produce a better result; a court should evaluate only whether the party's actual conduct was sufficient." *Holland Loader Co., LLC v. FLSmidth A/S*, No. 1:16-CV-6706-GHW, 2018 WL 2078034, at \*17 (S.D.N.Y. May 2, 2018) (*citing Bear, Stearns Funding, Inc. v. Interface Grp.–Nevada, Inc*., No. 03-cv-8259 (CSH), 2007 WL 1988150, at \*22 (S.D.N.Y. July 10, 2007). A contracting party's efforts are judged "objectively in light of proven standards," and must at a minimum show "some conscious exertion to accomplish the agreed goal, but something less than a degree of efforts that jeopardizes one's business interests." *Id.* at 18.

The Amended Complaint contains no facts to plausibly allege a breach of commercially reasonable efforts by Frieze. Plaintiff makes the conclusory allegation that Frieze "failed to properly design, test and regulate the ability of the air conditioning system at the Fair to adequately maintain an environment within which to conduct commercial business," (Compl. ¶ 21), but contains no details as to how this failure allegedly occurred. The Amended Complaint "fails to allege any commercially reasonable step that [the defendant] should have taken." *See JFK Holding Co. LLC v. City of New York*, 21 N.Y.3d 722, 727, 999 N.E.2d 1161, 1163 (2013) (complaint dismissed as a result of this failure); *see also Furman v. Wells Fargo Home Mortg. Inc.,* 26 Misc. 3d 1241(A), 907 N.Y.S.2d 437 (Sup. Ct. 2010) (dismissing complaint because plaintiff "fails to allege any facts to support her conclusory allegation that [defendant] did not [act]

in a commercially reasonable manner").   As, a result, The Amended Complaint should be dismissed.

The Amended Complaint merely concludes from the fact that it was hot during a heatwave and that Frieze was unable to "fix" the temperature to Plaintiffs' satisfaction that Frieze failed to act in a "commercially reasonable" manner.   This ignores the probability that it was the unprecedented heatwave, and not any culpability derived from Frieze's efforts, that caused Plaintiffs' discomfort.   Plaintiffs do not allege how causation is, or could be, shown.   Plaintiffs do not allege what Frieze could have done about the record-breaking temperature.   Plaintiffs cannot establish causation because they do not allege that their business would not have been interrupted by the heatwave if the air conditioning system offered greater cooling.   As a result, Plaintiffs' allegations fail to "nudge [their] claims across the line from conceivable to plausible, [and] the complaint must be dismissed."   *Twombly,* 550 U.S. at 570.

### 3.   The Complaint Fails to Plead Damages Attributable to the Alleged Breach of Contract

Even if the Contract did not foreclose all claims against Frieze relating to weather conditions at the fair, and even if Plaintiffs could sufficiently allege that Frieze breached the Contract, Plaintiffs' claim still fails because they do not plead damages attributable to the breach. Failure to plead damages, an essential element of a breach of contract claim, requires dismissal of the Amended Complaint.   *See Vista Food Exch., Inc. v. BenefitMall*, 138 A.D. 3d 535, 536, 31 N.Y.S.3d 9 (N.Y. App. Div.), leave to appeal denied, 28 N.Y.3d 902, 63 N.E.3d 71 (2016) (affirming dismissal of breach of contract claim at pleading stage because, *inter alia*, "plaintiff has failed to properly plead general or special damages").   Plaintiffs' "lawsuit seeks rescission of the contracts the [Galleries] signed with Frieze, and reimbursement of all sums paid for participation at the Art Fair."   (FAC ¶ 1; *see also* Prayer for Relief (seeking "[r]escission of the Contracts that

Plaintiffs and Class members entered into with Frieze").)  Yet, the Amended Complaint admits that rescission is inappropriate by its concession that Frieze New York 2018 took place.  Absent a claim for rescission, Plaintiffs' request for full "reimbursement" is not recoverable under New York law.

Rescission is an "extraordinary remedy," and "is to be invoked only when there is lacking complete and adequate remedy at law and where the status quo may be substantially restored." *New Shows, S.A. de C.V. v. Don King Prods., Inc*., No. 95 CIV. 8851 (RPP), 1999 WL 553780, at *3 (S.D.N.Y. July 29, 1999), aff'd, 210 F.3d 355 (2d Cir. 2000) (citing *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir.1980); *Rudman v. Cowles Communications, Inc.*, 280 N.E.2d 867, 874 (1972).  Where the "status quo prior to the contract is not capable of being restored," rescission is inappropriate.  *Id*. (citing *Rudman*, 280 N.E.2d at 874 (denying rescission when corporate acquisition which was subject of contract had been completed); *In re Ivan F. Boesky Sec. Litig*., 825 F. Supp. 623, 637 (S.D.N.Y.1993) (denying rescission where "plaintiff has realized and paid for the full benefit of the contract" and "[t]here are no obvious means to undo the entire restructure transaction"), aff'd, 36 F. 3d 255 (2d Cir.1994); *Stahl Management Corp. v. Conceptions Unlimited*, 554 F.Supp. 890, 894 (S.D.N.Y.1983) ("Usually, rescission may be obtained only when it is reasonably feasible to return the parties to their pre-contract status quo.").

The Amended Complaint does not dispute that Frieze New York 2018 occurred, or that Plaintiff SCG occupied the booth it leased for the entire 5-day fair, from May 2 through May 6, 2018.  In other words, "[t]he event which was the subject of the [Contract] was completed and is impossible to undo."  *New Shows,* 1999 WL 553780, at *3; *see also Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.,* No. 06 CIV. 3915, 2008 WL 4179235, at *6 (S.D.N.Y. Sept. 10, 2008) (denying claim for rescission because the party against whom rescission was sought had "already provided

some services from which [the party seeking rescission] has benefited"). Under these circumstances, "[n]ot only would it be "impracticable" to restore the status quo; it would be nearly impossible. This fact alone, and independently, renders rescission inappropriate." *New Shows, S.A. de C.V. v. Don King Prods., Inc.*, 210 F.3d 355 (2d Cir. 2000).

Moreover, the Amended Complaint does not plead that Plaintiffs lack an adequate remedy at law—rather, they concede they have one through their breach of contract claim. This fact also renders "rescission" inappropriate. *Strategic Growth*, 2008 WL 4179235, at *6.

Stripped of the equitable label of "rescission," Plaintiffs' claim for a full refund as contractual damages fails. "In an action for breach of contract, a plaintiff may seek two distinct categories of damages: (1) 'general' or 'market' damages; and (2) 'special' or 'consequential' damages." *Schonfeld v. Hilliard*, 218 F.3d 164, 175–76 (2d Cir. 2000) (citing 3 Dan B. Dobbs, Dobbs Law of Remedies § 12.2(3) (1993)). Plaintiffs nowhere mention that they seek consequential or special damages, but only claim they seek "benefit of the bargain" damages, i.e. "the value of the very performance promised." *Id.*[6] "Contract damages are ordinarily intended to give the injured party the benefit of the bargain by awarding a sum of money that will, to the extent possible, put that party in as good a position as it would have been in had the contract been performed." *Goodstein Const. Corp. v. City of New York*, 80 N.Y.2d 366, 373, 604 N.E.2d 1356, 1360 (1992) (citing Restatement [Second] of Contracts § 347, comment a; § 344). Plaintiffs' demand for complete reimbursement does not seek benefit of the bargain damages at all. Again, Plaintiffs cannot deny that they received value from Frieze—Frieze New York 2018 took place,

---

[6]     (*See* Compl. ¶ 51.) Even if Plaintiffs had attempted to plead consequential damages, they would fail to state a claim because they could not demonstrate that any such damages (such as Plaintiffs' failure to attract what they deem to be sufficient business at the fair) were both contemplated by the parties as recoverable and more than "speculative, possible, or imaginary." *Schonfeld*, 218 F.3d at 172; *see also Vista Food,* 138 A.D.3d at 536-37.

and Plaintiffs occupied their booth each day.   While the Amended Complaint alleges that temperatures on the "opening day" of the fair were "oppressive," and that as a result Plaintiffs lost business from collectors who believed it was too hot, (FAC, ¶¶ 22-25), it contains no details on the conditions during the other four days of the fair, and does not claim that Plaintiffs failed to conduct *any* business with collectors.   Plaintiffs cannot seek a complete refund as "benefit of the bargain" damages, and therefore fail to allege damages at all.[7]

Rather, Plaintiffs request a full "refund" as a proxy to fill in for speculative lost profits. Plaintiffs claim that they were damaged by the record-breaking heat because, as the temperature in New York City "continued to rise" on the first day of the far, "[c]ollectors and consultants who had made appointments with Plaintiffs to visit the exhibit notified Plaintiffs that they could not stay there due to the heat," and others "never even kept their appointments" (i.e., they did not come to Randall's Island at all because of the heatwave).   (FAC, ¶¶ 22-25.)   This alleged loss of business has no relation to the value of the rental fee they paid to exhibit their art over five days at Frieze New York 2018.   *See Washington v. Kellwood Co*., No. 05-CV-10034 (SN), 2016 WL 3920348, at *19 (S.D.N.Y. July 15, 2016), aff'd, 714 F. App'x 35 (2d Cir. 2017), cert. denied, 138 S. Ct. 2029, 201 L. Ed. 2d 280 (2018) ("the future expectation of the parties is irrelevant to the calculation of market value" under New York law).   Plaintiffs' alleged damages—a complete refund of every dollar they paid Frieze to participate in Frieze New York 2018—"do not directly flow from and are not the 'natural and probable consequence' of defendants' alleged breach, and, therefore, do not qualify as general damages."   *Vista Food*, 138 A.D.3d at 536.

Thus, even if Plaintiffs could avoid the strict limitations of liability in the Contract, and

---

[7]      Frieze expects that Plaintiffs' choice to seek "rescission" and a "full refund" instead of pleading contract damages was calculated to sidestep insurmountable individualized issues, relating to the element of damages, at class certification.   This effort fails.

plausibly allege that Frieze breached the Contract, their claims must still be dismissed for failure to plead contractual damages recoverable under New York law.

### 4.   Plaintiff Julie Campbell's Breach of Contract Claim Should Be Dismissed Because She is Not a Party to the Contract

Plaintiff Julie Campbell is not a party to the Contract, and thus her claim for breach of contract must be dismissed.  "[A] claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citations and quotations omitted).  The sole allegation specific to Plaintiff Campbell is that she is an "adult co-owner of Plaintiff Shane Campbell Gallery, Inc., and resides in Chicago, IL."  (FAC ¶ 9.)  The Amended Complaint incorrectly alleges that Frieze "entered into the Contract with Plaintiffs." (*Id.* ¶ 47.)  In fact, the Contract attached to the Amended Complaint is "between Frieze and Exhibitor." (FAC, Ex. A, § 1.)  Plaintiff Shane Campbell Gallery is the Applicant and Exhibitor under the Contract. (*Id.*)  Plaintiff Campbell is not an Applicant, Exhibitor, or party to the Contract.  Thus, no contract exists between Frieze and Plaintiff Campbell and her breach of contract claim must be dismissed.

### C.   The Second Cause of Action for "Unjust Enrichment" Should Be Dismissed Because a Contract Governs the Subject Matter of Plaintiffs' Claims

Plaintiffs' second cause of action, for unjust enrichment, should be dismissed as well.  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Tasini v. AOL, Inc.*, 505 F. App'x 45, 47 (2d Cir. 2012) (citing *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).  Plaintiffs' unjust enrichment claims are based on the same facts and subject matter as their breach of contract claim—namely, Frieze's alleged liability from the heat wave that hit New York City during Frieze New York 2018.  New York law is clear that claims for unjust enrichment are precluded by the

existence of a valid contract that governs the same subject matter.  Even were the claim not barred, neither Plaintiff can demonstrate the elements of an unjust enrichment claim under New York law.

The Second Circuit, Southern District of New York, and New York state courts have all held the existence of a valid and enforceable contract precludes an unjust enrichment claim relating to the subject matter of the contract.  *See e.g. MacDraw, Inc. v. CIT Group Equip. Fin., Inc*., 157 F.3d 956, 964 (2d  Cir. 1998) (stating it is a well-settled principle of New York law that a valid and enforceable contract precludes recovery under a theory of unjust enrichment for subject matter governed by the contract); *Mariah Re Ltd. v. Am. Family Mut. Ins. Co.,* 52 F. Supp. 3d 601, 620 (S.D.N.Y. 2014), *aff'd sub nom. Maria Re Ltd. ex rel. Varga v. Am. Family Mut. Ins. Co*., 607 F. App'x 123 (2d Cir. 2015); *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co*., 516 N.E. 2d 190, 193 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."); *Golub Assocs. Inc. v. Lincolnshire Mgmt., Inc*., 1 A.D.3d 237, 767 N.Y.S.2d 571, 572 (1st Dep't 2003) ("Nor is a claim predicated on unjust enrichment cognizable where the parties' rights and obligations are governed by a valid and enforceable contract."); *Krause v. Forex Exch. Mkt., Inc*., 12 Misc.3d 1192(A), No. 05–601854, 2006 WL 2271274, at *4 (N.Y.Sup.Ct. Mar. 1, 2006).  Plaintiffs do not dispute the validity of the Contract attached to the Amended Complaint. Plaintiffs  do  not  dispute  that  Frieze's  purported  responsibility  arises  from  the  Contract. Accordingly, Plaintiffs' unjust enrichment claim is entirely duplicative of its breach of contract claims and cannot survive under controlling New York law.

Plaintiff Campbell's unjust enrichment claim must be dismissed for the additional reason that Frieze did not receive any benefit at her expense.  The Amended Complaint incorrectly pleads that "Frieze was enriched at the expense of Plaintiffs . . . through the payment of the price for

becoming an Exhibitor at the Fair."  (FAC ¶ 53.)  Plaintiff Campbell is not an "Exhibitor" under the Contract.  (*Id.*, Ex. A.)  Under the Contract, Plaintiff SCG was responsible for the rental fee to exhibit its art at Frieze New York 2018.  Because Plaintiff Campbell did not confer any benefit upon Frieze, she cannot recover on an unjust enrichment claim.

And, even if Plaintiff SCG or Plaintiff Campbell had conferred a benefit upon Frieze and were legally entitled to assert an unjust enrichment claim, they fail to plead how "equity and good conscience require restitution."  As set forth above, Plaintiffs have not set forth a single allegation to lend plausibility to their conclusion that Frieze was "grossly negligent."  This is the sole allegation that supports Plaintiffs' unjust enrichment claim.  (FAC, ¶ 52.)  And, Plaintiffs have no allegations to support how "equity and good conscience require restitution" of participation fees for Frieze New York 2018 where the fair took place as planned.  Accordingly, even were it not barred, Plaintiffs' unjust enrichment claim fails.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Frieze respectfully requests that the Court grant its motion to dismiss the Amended Complaint, with prejudice.  Dismissal with prejudice is appropriate here because, as set forth above, Plaintiffs cannot plead facts to overcome the broad limitations of liability contained in the Contract, and their unjust enrichment claim is barred under New York law.  *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result).

Dated: New York, New York
     November 14, 2018

KELLEY DRYE & WARREN LLP

By:   */s/ Michael C. Lynch*
     Michael C. Lynch
     James B. Saylor
     KELLEY DRYE & WARREN LLP
     101 Park Avenue
     New York, NY 10178
     (212) 808-7800 (p)
     (212) 808-7897 (f)
     mlynch@kelleydrye.com
     jsaylor@kelleydrye.com

     *Attorneys for Defendant Frieze Events, Inc.*