K2p1cama

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    SHANE CAMPBELL GALLERY, INC.,

4                  Plaintiff,

5          v.                              18 Civ. 5134 (JSR)

6    FRIEZE EVENTS,

7                  Defendant.              Oral Argument

8    ------------------------------x
                                           New York, N.Y.
9                                          February 25, 2020
                                           11:08 a.m.
10
     Before:
11
                        HON. JED S. RAKOFF,
12
                                           District Judge
13
                            APPEARANCES
14
     LEWIS SAUL & ASSOCIATES, P.C.
15        Attorneys for Plaintiff
     BY:  LEWIS SAUL, ESQ.
16        EDWARD A. COLEMAN, ESQ.

17   KELLEY DRYE & WARREN, LLP
          Attorneys for Defendant
18   BY:  MICHAEL C. LYNCH, ESQ.
          JAMES B. SAYLOR, ESQ.

19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

K2p1cama

1          (Case called)

2          THE DEPUTY CLERK:  Will the parties please identify

3     themselves for the record.

4          MR. SAUL:  Yes.  Good morning, your Honor.  Lewis

5     Saul, S as in Sam, A-U-L, for plaintiffs.

6          MR. COLEMAN:  And Edward Coleman from Lewis Saul &

7     Associates for plaintiff.

8          MR. LYNCH:  Good morning, your Honor.  For the

9     defendant, Michael Lynch from Kelley Drye & Warren.

10          MR. SAYLOR:  Good morning, your Honor.  James Saylor,

11     also of Kelley Drye & Warren, for the defendants.

12          THE COURT:  Good morning.

13          All right.  As near as I can tell, nothing has

14     occurred in this case.  Did I miss something?

15          MR. SAUL:  No, your Honor.  This motion was sitting

16     dormant for a year and nothing has occurred in the case.

17          THE COURT:  And that's before Judge Moses, or has she

18     issued an order on it?

19          MR. COLEMAN:  No.  It was before Judge Batts.

20          THE COURT:  No, no, no.  That's not my question.  It

21     was before Judge Batts.  I thought she referred the motion to

22     Magistrate Judge Moses.

23          MR. COLEMAN:  Correct.

24          THE COURT:  Yes.  Has Judge Moses done anything?

25          MR. COLEMAN:  No.

K2p1cama

1          THE COURT:  All right.  Bear with me one minute.  I

2    want to call Judge Moses.

3          Please be seated.  I'm sorry I didn't have the file in

4    front of me and I'd forgotten that I'd already withdrawn the

5    reference to Judge Moses.  So I will decide that motion

6    promptly.

7          I suggest the following case management plan.  By the

8    way, this is a jury case?

9          MR. SAUL:  Yes.

10         THE COURT:  Any additional parties must be

11    accomplished by March 25th.  Amended pleadings by March 25th.

12    First request for documents must be served by March 4th.  The

13    extremely limited interrogatories permitted by Local

14    Rule 33.3(a), which are the only interrogatories I permit, must

15    be filed by March 4th.

16         Does either side anticipate experts?

17         MR. SAUL:  Possibly, your Honor.  One.

18         THE COURT:  Okay.  So moving experts June 19th;

19    answering experts, July 10th.  All depositions to be completed

20    by July 24th.  Requests to admit served by June 17th.  All

21    discovery to be completed by July 24th.  Moving papers on any

22    summary judgment motion August 7th.  Answering papers

23    August 21st.  Reply papers August 28th.  Oral argument on any

24    summary judgment motion, September 11th, at 2 p.m.

25         Any problem with any of those dates?

K2p1cama

1              MR. SAUL:  No, your Honor.

2              THE COURT:  Okay.

3              MR. LYNCH:  Your Honor?

4              THE COURT:  Yes.

5              MR. LYNCH:  No.  Never mind.  It's okay.

6              THE COURT:  All right.  So I've signed a case

7     management plan incorporating all those dates, and I'll give it

8     now to my courtroom deputy to file, to docket it

9     electronically.

10             All right.  Anything else we need to take up today?

11             Very good.  Thanks very much.

12             MR. SAUL:  Your Honor, there's an outstanding motion

13    that --

14             THE COURT:  I'm going to assign that in a matter of

15    days.

16             MR. SAUL:  Okay.  Thank you, your Honor.

17             THE DEPUTY CLERK:  All rise.

18                              o0o

19             (In open court)

20             THE COURT:  I was so, as you may have gathered,

21    chagrined by the two cases prior to yours that I completely

22    forgot that I wanted to give you the opportunity today to have

23    oral argument on your motion.

24             I have a conference call at 11:30, but let's at least

25    start oral argument, and then the conference call will only

K2p1cama

1    last ten minutes or so, so we can continue after that if

2    necessary.

3              So let me hear from moving counsel.

4              MR. LYNCH:  Plaintiff?

5              THE COURT:  From moving counsel.

6              MR. LYNCH:  Oh, I'm sorry.  I couldn't hear what you

7    said.

8              THE COURT:  That's all right.

9              MR. LYNCH:  Good morning, your Honor.

10             This case, to the extent that you haven't had a chance

11   to familiarize yourself too much with it, it involves an art

12   fair that our client Frieze puts on on Randall's Island every

13   May in New York.  They have another one in London and another

14   one in Los Angeles.

15             In May of 2018, the plaintiff here was one of the

16   galleries that rented space to be part of that fair.  Our fair

17   on Randall's Island has a series of tents that they're in, and

18   the complaint here is essentially that, we believe, plaintiff

19   didn't make the number of sales that they had hoped to make or

20   that they expected to make, and so as a result, although that

21   was not, you know -- there was certainly no guarantee by the

22   defendant in terms of how many sales they would make, they've

23   now attempted to blame the weather for that lack of sales.  And

24   in particular, Judge, the first two days of this fair, which is

25   a five-day fair in early May, the temperature in New York

K2p1cama

exceeded 90 degrees, as plaintiff has alleged.  And the

complaint is that the --

THE COURT:  Just a function of global warming, I'm

sure.

MR. LYNCH:  Who knows.

So the complaint is essentially that the air

conditioning was insufficient and, as a result, they didn't

make the number of sales and drive the traffic that they --

THE COURT:  Well, as I understand it, the key clause

of the contract is Section 18:  "Frieze will use commercially

reasonable efforts to provide common area lighting, heating,

and air conditioning but shall not be liable for any loss or

damage due to failure or interruption of any service."  And the

question is whether plaintiffs have adequately alleged that you

failed to use commercially reasonable efforts.  Do I have that

right?

MR. LYNCH:  Yes.

THE COURT:  Okay.  So as I further understand it,

there were air conditioning vents located along the ceiling,

which was a change from years past when they were at the tent's

floor, yes?

MR. LYNCH:  That's the allegation, yes, your Honor.

THE COURT:  And I understand you may not agree with

any of these allegations, but for these purposes, I take them

as established if they're well pleaded.  And in any event,

K2p1cama

whatever air conditioning there was, they say, was totally
insufficient.

         There doesn't appear to me to be much New York law --
much law, period -- on what is meant by "commercially
reasonable efforts."  And a question I have for your adversary
is whether they have adequately alleged the specific ways in
which the air conditioning fell short of the standard, but this
kind of dispute has historically, in other kinds of torts, been
a classic jury question, so I wonder why it isn't here.

         MR. LYNCH:  Your Honor, so it could be.  We've cited
some case law that sets a very high standard, in particular the
*Holland Loader* case, which plaintiffs also cited.  It's a
Southern District case from 2018.  And that sets the standard
as a conscious attempt to secure an outcome or some affirmative
action by the party required to exert efforts.  Now there's no
allegation that we failed to exert efforts.

         THE COURT:  I'm looking at that case by Judge Woods,
and it says, confirming what I just said, although there is
"scant case law defining the phrase 'commercially reasonable
efforts,' compliance with a commercially reasonable efforts
clause requires at least some conscious exertion to accomplish
the agreed goal."  That sounds like not a matter that can be
dealt with on a motion to dismiss.

         MR. LYNCH:  Well, your Honor, I would respectfully
disagree and I would point you to the pleadings in the

K2p1cama

complaint where the plaintiff first acknowledges that there was

air conditioning, right?  So there was an effort to have air

conditioning there.  And that's not the kind of sort of failure

to act that these cases talk about in terms of the pleading

standard, the minimal standard.  That air conditioning unit,

you know, worked three -- the third day in, there was no

complaint that it didn't work.  That day it was in the 80s.

Obviously plaintiff themselves plead that this was a heat wave,

an unexpected heat wave which set records.

          THE COURT:  Well, when you say unexpected heat wave,

the temperatures like that would be normal like in July and

August.  It's not like an experience -- I made the joke about

global warming, but just human experience is that there are

often days in May that are summer heat, just like there are

often days in April that are winter cold.  I mean, those things

happen with the change of seasons.  I don't see what's so

unusual in terms of foreseeable expectations that there would

be a really hot day or two in May.

          MR. LYNCH:  So foreseeable is not the standard.  So

the standard is whether it's compliant, whether they've taken

actual steps and actual actions to meet the need.  It's not an

absolute guarantee, if you look in the cases.  One of the other

cases talks about how it's not a hindsight comparison of what

you could have done better, you know, what it might have been.

And here, the plaintiff doesn't plead what concrete steps we

K2p1cama

1   failed to take, what concrete steps we could have taken that

2   could have resolved the issue.

3          You know, this was extreme heat.  I don't think

4   there's a question about that.  And while you may be able to

5   anticipate that, it's also commercially reasonable, right?  The

6   standard is not we have to take all steps to guarantee against

7   all possibilities.  It's a commercially reasonable --

8          THE COURT:  Commercially reasonable, one would think,

9   means commercially reasonable under what would be the expected

10  conditions.  I don't see how the issue of foreseeability is

11  irrelevant.  It's not the standard, but I think it's still

12  relevant.  If a reasonable commercial vendor, asked to air

13  condition a tent, was not taking into account that there might

14  be some very hot days in May, why isn't that commercially

15  unreasonable or at least a jury question as to whether it was

16  commercially unreasonable?

17         MR. LYNCH:  Well, I think the plaintiff has to plead

18  facts that we failed to take some steps that we could have done

19  to fix the problem.  The cases which analyze the issue talk

20  about basically an abandonment of your obligation.  Plaintiff

21  even pleads that we were attempting to fix it during the heat

22  wave, that we were taking affirmative steps, that we were, you

23  know, we were doing what we could do under the circumstances.

24  You know, and again, I would just say it's not an obligation to

25  prepare for all circumstances.  It's not an obligation to

K2p1cama

1  prepare for extreme situations.  It's a reasonably commercial

2  standard, which is lower.

3          THE COURT:  But -- and maybe we're still at odds here.

4          MR. LYNCH:  I'm sure --

5          THE COURT:  Yes, it's not a guarantee that you will

6  prepare for all possible events.  You know, there's an

7  unbelievable heat wave that no one could ever have expected,

8  but it doesn't mean that you don't prepare for changes in

9  temperature that are reasonably foreseeable.  You're not

10 maintaining, are you, that if the average high temperature in

11 May was 70 degrees, hypothetically, and your air conditioning

12 failed to work adequately at 71, you would have still been

13 commercially reasonable?

14         MR. LYNCH:  No, but I think, you know, mid 90s is a

15 little different, and plaintiffs even acknowledge --

16         THE COURT:  I agree, but -- well, all right.

17         With apologies, I have to take that conference call,

18 but we will continue.  I don't imagine this call, worst case,

19 will last more than 15 minutes, so why don't you come back in

20 15 minutes, and if it's about five minutes later, so be it, but

21 I don't think it will be later than that.

22         MR. LYNCH:  Thank you, Judge.

23         THE COURT:  Very good.

24         (Recess)

25         (In open court)

K2p1cama

1          THE COURT:  Please be seated.

2          So let's continue.

3          I didn't have a chance to ask you about the other part

4     of this clause, the no liability.  So it says in Section 18,

5     "Frieze will use commercially reasonable efforts to provide

6     common lighting, heating and air conditioning but shall not be

7     liable for any loss or damage due to failure or interruption of

8     any service."  So if that means what I think you're saying it

9     means, doesn't it totally wipe out the first clause?

10          MR. LYNCH:  Yes, it does.

11          THE COURT:  So --

12          MR. LYNCH:  Well --

13          THE COURT:  So you are free to, under this contract,

14     to use commercially unreasonable services, commercially

15     unreasonable efforts, because you can't be charged with any

16     loss.

17          MR. LYNCH:  So, your Honor, I think maybe I spoke a

18     little too quickly on your question, but look, I think what

19     that provision is saying is that we are going to do what we can

20     to make this a comfortable environment for the fair.  But

21     everybody knows that it is an outdoor fair and there can be

22     storms, there can be thunderstorms, there can be, you know,

23     extreme weather conditions, and here, there was an extreme

24     weather condition.  It was literally an unprecedented heat

25     wave, and I think here -- it was.  As they pleaded as well, it

K2p1cama

 1    was a record-breaking heat wave that year in May.

 2             THE COURT:  Well, I think my understanding is it was

 3    record breaking for those particular days.  I'm not sure it was

 4    record breaking for May as a whole.  But anyway --

 5             MR. LYNCH:  May can be a volatile month, but we're in

 6    early May.  Your Honor, I guess, if I may, I think, you know,

 7    the idea is, we're going to do our best but you cannot hold us

 8    responsible for extreme weather conditions.  And in fact, we do

 9    have Section 13 of the contract that addresses that

10    specifically, in which we disclaim liability for any weather

11    condition.  And I think an unprecedented, record-breaking heat

12    wave --

13             THE COURT:  Yes.  Very broad.  I want to ask your

14    adversary about Section 13 when we get to it, but my question

15    to you is:  Let's say you use unquestionably unreasonable

16    commercial efforts, in my hypothetical.  You're grossly

17    negligent.  You just blow it completely.  But under your

18    interpretation of these clauses we've just been discussing,

19    your position is, ah, too bad, you agreed that we would not be

20    responsible for any of the consequences.  So is there any

21    situation in which you could be held responsible?  Is the first

22    clause about "commercially reasonable efforts" just a phantom,

23    a miasma?

24             MR. LYNCH:  No, your Honor.  What I would submit, your

25    Honor, is that clearly gross negligence would be a situation

K2p1cama

1    that would arise in which a claim could arise.  And I don't

2    think we're disputing that.  We're just disputing that they

3    pled that.  With respect to 18 specifically, you know, what we

4    are saying is we are going to do our best to get out to you

5    these specific services on an island, unconnected to, you know,

6    a building or an original source, and we are going to do what

7    we can to make that work, but we want you to recognize that

8    this is an inherently unpredictable event because it is an

9    outdoor event.

10         THE COURT:  All right.  Let me hear from your

11   adversary.  We'll give you a chance for rebuttal at the end.

12         MR. LYNCH:  Thank you, your Honor.

13         MR. SAUL:  Good morning, your Honor.

14         THE COURT:  Good morning.

15         MR. SAUL:  Whether or not something is commercially

16   acceptable is a question for the jury.

17         THE COURT:  Well, they're saying, among other things,

18   that to be adequately pleaded, it's not enough to say it was

19   not commercially acceptable, that you have to say, because they

20   didn't do this, they didn't do that, and they say you don't

21   adequately allege that with specificity.

22         MR. SAUL:  Well, we agree with the first half of that

23   statement, but we disagree with the second half.  And let me go

24   through the complaint and point your Honor out to what we did

25   in fact say.

K2p1cama

1          THE COURT:  Yes.  Let me get a copy of the complaint.

2          Here we are.  Good.  Go ahead.

3          MR. SAUL:  In paragraph 21, we state, of the first

4     amended complaint, "Defendant breached by not properly

5     designing, testing, and regulating the AC system."

6     Paragraph 21, "by failing to adequately respond to the problems

7     resulting from high temperatures within the tent and breached

8     its obligation to use commercially reasonable efforts to

9     provide common area air conditioning."  Paragraph 18 of the

10    contract states they would use commercially reasonable efforts.

11         Paragraph 23 of the first amended complaint states,

12    "Frieze was aware of the problem but took no action to correct

13    it."

14         Paragraph 22 and 24 says, "At the beginning of the

15    first day of the event, the heat in the tent was oppressive and

16    the temperatures continued to rise throughout the day."

17         22, 24, 25, "The environment in which exhibitors were

18    expected to conduct their business was not adequately air

19    conditioned."

20         And it goes on and on and on.  And we plead with

21    specificity that they did not act in a commercially reasonable

22    way.  I'm sure that I don't have to remind the Court, because

23    the Court knows, but under Rule 8 a complaint must only contain

24    a short and plain statement of the claim showing that the

25    pleader is entitled to relief, and reviewing a motion to

K2p1cama

dismiss under 12(b)(6), courts accept all factual allegations,

as I just stated, in the complaint is true and draw all

reasonable inferences in favor of plaintiff.

THE COURT:  Thank you for reminding me of that, but of

course that has, in effect, had a gloss put upon it by the

*Iqbal* and *Twombly* cases.  And so, for example, you say in

paragraph 21 that you just drew my attention to, "Frieze failed

to properly design, test, and regulate the ability of the air

conditioning system at the fair to adequately maintain an

environment within which it conducts commercial business."  But

that's essentially a conclusion.  It's not a statement of fact,

it's a conclusory statement, that the design, testing, and

regulation were "improper."  So even before *Iqbal* and *Twombly*,

those kind of allegations would probably not cut it for Rule 8

purposes.

Now you do add more detail, as you just pointed out,

as to a failure, once the heat became oppressive, that,

according to your complaint, they did nothing.  Where do you

find the contractual duty for them to do something at that

point?  I'll give you a hypothetical.  So supposing they did

make commercially reasonable efforts to design an air

conditioning that would work, in my hypothetical, for all

reasonably foreseeable events.  They say they don't have to do

that, but I'll assume that for purposes of the hypothetical.

But along comes a heat wave that no one could reasonably have

K2p1cama

1   assumed.  It gets to 120 degrees.  Your complaint seems to

2   suggest that they have a duty to come in at that point and do

3   something.  But where is that in the contract?

4           MR. SAUL:  Is the question if the temperature --

5           THE COURT:  Well, I'm just saying, I'm looking at some

6   of the paragraphs you just brought to my attention.

7           22.  "Within the first hour of the opening day, the

8   heated temperatures in the tent were oppressive."

9           23.  "Frieze was aware of the problem but took no

10  action to correct."

11          So that presupposes, for that to be relevant, that

12  they had a duty to correct it at that point.  Where do you find

13  that duty in the contract?

14          MR. SAUL:  The duty is to provide, in the contract --

15  then I can find -- I can go through the contract, but the

16  contract says that they will provide air conditioning --

17  electricity, etc., etc., etc., and air conditioning.

18          THE COURT:  No, no.  I know that.  But, for example --

19  well, okay.  I think, focusing on that, as you did, on

20  paragraph 23, because I'm not sure I see anywhere else anything

21  other than conclusory statements, not to mention one or two

22  what might be called rhetorical excesses.

23          Paragraph 32.  "Frieze's offer is ludicrously

24  insufficient to compensate plaintiffs and other exhibitors for

25  Frieze's gross negligence as described above."  I take it you

K2p1cama

1    don't find their offer acceptable.  But I don't think the word

2    "ludicrous" is an appropriate professional word to use in a

3    complaint.

4         Okay.  Anything else you wanted to say?

5         MR. SAUL:  No.  Only just to reiterate, I think that

6    we've pled, under the rules of pleading for a breach of

7    contract, the elements necessary --

8         THE COURT:  So supposing I disagreed.

9         MR. SAUL:  I should have shut up.

10        THE COURT:  That's all right.  Supposing I disagreed

11   and I would give you leave to amend.  What would you add?

12        MR. SAUL:  Well, I think that we -- I'm of sort of a

13   double mind there.  I think that we've pled properly --

14        THE COURT:  No, I understand.  And if I agree with

15   you, that's that.  But if I disagree with you, I want to know

16   whether I need to give you leave to amend.  I wouldn't give you

17   leave to amend if there's nothing more you can add.

18        MR. SAUL:  Well, I suppose that we would say -- we

19   would speak with an expert and an expert would say -- for

20   instance, if you're stuck on the tarmac when it's very warm

21   outside, they bring in these big units blowing cold air.  We

22   could add that they should have done X, Y, and Z in order to

23   bring the temperature down --

24        THE COURT:  But --

25        MR. SAUL:  -- that sort of thing.

K2p1cama

| | |
|---|---|
| 1 | THE COURT:  All right.  Thank you very much. |
| 2 | Let me hear in rebuttal from defense counsel. |
| 3 | MR. SAUL:  Thank you, your Honor. |
| 4 | THE COURT:  Thank you. |
| 5 | MR. LYNCH:  Thank you, your Honor. |
| 6 | THE COURT:  So following up on that, supposing -- |
| 7 | because I do agree with you that at least much of this |
| 8 | complaint is conclusory.  Supposing I were, hypothetically, to |
| 9 | dismiss the complaint.  Second Circuit law says that in all but |
| 10 | extraordinary circumstances, have to give them leave to |
| 11 | replead, and they say they can fill in or they would consult an |
| 12 | expert to fill in the gaps.  So is there any reason why I |
| 13 | shouldn't at least give them that leave? |
| 14 | MR. LYNCH:  Your Honor, no.  I think the problem with |
| 15 | the pleadings is that there is no more that could have been |
| 16 | done here.  And I think what we're talking about is, you know, |
| 17 | we have reasonably -- we have an obligation to provide |
| 18 | reasonably commercial efforts.  Now what we tried to do is, we |
| 19 | had air conditioning.  There's no allegation that on the third |
| 20 | day it didn't work, and that it was in the mid 80s for early |
| 21 | May, which is a high temperature, and so, you know, we were |
| 22 | dealing with an extreme weather condition.  That is just beyond |
| 23 | anything -- |
| 24 | THE COURT:  So what about this paragraph that I was |
| 25 | just focused on that when it reached these extremes, you did |

K2p1cama

1    nothing?

2          MR. LYNCH:  You're referring to their allegation in

3    paragraph 23, correct?

4          THE COURT:  Paragraph --

5          MR. LYNCH:  In the complaint?

6          THE COURT:  Yeah, I think that's right.  Hold on just

7    a second.

8          Yes, 23.

9          MR. LYNCH:  So there is no obligation in the contract.

10   We don't have an obligation to cure that.  In fact, we think

11   that we've disclaimed liability in the event of an

12   interruption.  Obviously it's good business practice to try to,

13   you know, keep the customers happy and get it working, but

14   there's no contractual obligation to do so.

15         And I would also submit, your Honor, that this is also

16   a very conclusory statement, right, that we took no action and

17   we did have an air conditioning unit on site that by the third

18   day they were not complaining about.  And so it's not that we

19   took no action.  I mean, they've even gone so far as to plead

20   in their opposition brief that we handed out water bottles and

21   that we were apologizing, but, you know, that is the extent of

22   the allegation.  And they have not and cannot identify a

23   specific thing that they think we could have done.

24         Now, you know, it's also important to go back to where

25   I started, which is in the *Holland Loader* case.  You know, the

K2p1cama

1    court there was saying, you don't go back in hindsight and sort

2    of re-evaluate what they did.  And that was sort of my quibble

3    with the term "foreseeable."  That is not the test.  The test

4    is, you know, looking back, was it commercially reasonable, and

5    I think there is a difference there, and I think there's

6    importance in the language in that case, and so for example, I

7    think it's spelled out a little bit more in the -- there's a

8    New York Court of Appeals case that we cited called *JFK*.  And

9    in that case, your Honor, the plaintiff, JFK Holding, was suing

10   the defendant, the Salvation Army, under their contract for

11   failing to engage in commercially reasonable efforts to collect

12   as much rent as they could from the City of New York in

13   connection with a separate contract they had with the city.

14   And in that instance, the plaintiff couldn't allege and didn't

15   allege that there was any provision in that contract that would

16   have permitted the defendant in that case to collect more,

17   right?  Their argument was basically about the condition of the

18   building, and it didn't relate to the contract itself.  And in

19   that instance that was a case that was dismissed at the

20   pleading stage.  And that is a, as I said, a New York State

21   Court of Appeals opinion.

22          We also cite another trial court matter, trial court

23   case from New York State, where it was dismissed on the

24   pleadings, but ultimately, you know, we feel that the

25   commercially reasonable standard does not require us to prepare

K2p1cama

1    for any eventuality and it becomes difficult to draw the line.

2    You know, you mentioned earlier 120 degrees.  Where does that

3    line get drawn?

4              THE COURT:  Okay.  Thank you very much.

5              MR. LYNCH:  Thank you.

6              THE COURT:  So I thank both sides for their good

7    arguments.  I will give you a bottom-line ruling on this motion

8    by Thursday of this week.  I'm not sure I'll have a full

9    opinion by then, but at least the bottom line.

10             There are obviously three logical possibilities.  One

11   is I deny the motion, then we already have the case management

12   plan in place and go forward; one is I grant the motion with

13   prejudice, that's the end of the case; one is that I grant the

14   motion with leave to replead, in which case I will put

15   plaintiffs on a very short time frame to replead.  Probably a

16   week for any amended pleading.  And we'll adjust the case

17   management plan accordingly at that point.  So those are the

18   three possibilities.

19             Anything else we need to take up today?

20             MR. LYNCH:  Just a little clarification.  When you say

21   a bottom-line order, you're referring to the -- there's a --

22             THE COURT:  It means it's two sentences:  "The motion

23   is granted"; "the motion is denied"; or, "The motion is granted

24   with prejudice"; "the motion is granted without prejudice."

25   That's what I mean.  I always follow it up with a full opinion.

K2p1cama

1          MR. LYNCH:  No, I've been before you for that as well.

2     But my question is a little different.  We haven't discussed a

3     couple of the other claims, like unjust enrichment.

4          THE COURT:  I'm sorry.  You're right to remind me.  So

5     the case management plan then stands in place then, given the

6     other claims.

7          Okay.  Very good.  Thanks very much.

8          ALL COUNSEL:  Thank you, your Honor.

9                              o0o